## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHELSEA HENKEL, LISA HASTINGS, LEONORA MOCERINO, CRAIG MOCERINO, and LIZETH LARKIN, on behalf of themselves and others similarly situated, | : : : : : : : | CIVIL ACTION <br><br> Case No.:  3:15-cv-01435-RDM (Honorable Robert D. Mariani) |
| Plaintiffs, <br> v. <br><br> HIGHGATE HOTELS, L.P., and COVE HAVEN, INC., <br><br> Defendants. | : : : : : : : : : : | *Document Filed Electronically* |

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR CERTIFICATION PURSUANT
## TO FED. R. CIV. P. 23 AND 29 U.S.C. § 216(b)

Dated:  August 14, 2019

David B. Feldman
Evan B. Citron
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C
599 Lexington Avenue, 17th Floor
New York, NY 10022
(212) 492-2500

*Attorneys for Defendants*
*Highgate Hotels, L.P. and Cove Haven, Inc.*

# **TABLE OF CONTENTS**

**Page(s)**

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ..................................................................... 1

    A.  STARWOOD'S MANAGEMENT OF THE RESORTS ................... 1

    B.  HIGHGATE'S MANAGEMENT OF THE RESORTS ...................... 3

    C.  PLAINTIFFS' APPLICATION ........................................................ 6

III.  ARGUMENT .......................................................................................... 7

    A.  PLAINTIFFS FAIL TO FURNISH THE PROOF NECESSARY
        TO CERTIFY THEIR PROPOSED CLASS ................................. 7

        1.  Plaintiffs Have Failed to Prove Numerosity ............................... 8

        2.  Plaintiffs Have Failed to Prove Commonality ......................... 11

        3.  Plaintiffs Have Failed to Prove Typicality ............................... 13

        4.  Henkel Has Failed to Prove Adequacy ..................................... 14

    B.  PLAINTIFFS FAIL TO FURNISH THE PROOF NECESSARY
        TO OBTAIN COLLECTIVE CLASS CERTIFICATION .............. 17

        1.  Plaintiffs Fail to Show That They Are Similarly Situated
            to Each Other or to the Members of Their Proposed
            Collective ................................................................................. 19

        2.  Individualized Inquiries Within the Proposed Collective
            Class Would Permeate This Action ........................................... 19

        3.  The Court Should Deny Plaintiffs' Request for Equitable
            Tolling ..................................................................................... 20

    C.  PLAINTIFFS' PROPOSED NOTICE SHOULD BE
        REJECTED ................................................................................. 21

IV.  CONCLUSION ..................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)............................................................................7, 12

*American Pipe & Construction Co. v. Utah,*
414 U.S. 538 (1974).................................................................................16

*A.Q.C. ex rel. Castillo v. United States,*
656 F.3d 135 (2d Cir. 2011) ...................................................................21

*Bond v. Nat'l City Bank of Penn.,*
2006 WL 1744474 (W.D. Pa. June 22, 2006) ........................................18

*China Agritech, Inc. v. Resh,*
138 S. Ct. 1800, 1801 (2018)...................................................................16

*Comcast Corp. v. Behrend,*
569 U.S. 27, 33 (2013).............................................................................7

*Coyle v. Hornell Brewing Co.,*
2011 WL 2147218 (May 26, 2011 D.N.J.)........................................15, 16

*Fengler v. Crouse Health Found., Inc.,*
595 F. Supp. 2d 189 (N.D.N.Y. 2009)....................................................22

*Gen. Tel. Co. v. Falcon,*
457 U.S. 147, 157-58 (1982) ...................................................................13

*Glatt v. Fox Searchlight Pictures, Inc.,*
791 F.3d 376 (2d Cir. 2015) ...................................................................20

*Hayes v. Wal-Mart Stores,*
725 F.3d 349, 357 (3d Cir. 2013) ...........................................................10

*Hintergerger v. Catholic Health Sys.,*
2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ........................................22

*Holesapple v. E-MortgageMgmt, LLC,*
2011 WL 6887684 (D.N.J. Dec. 29, 2011)..............................................19

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2009) ...............................................................................8

*Irwin v. Dep't of Veterans Affairs,*
  498 U.S. 89 (1990)...........................................................................................21

*Jackson v. Bloomberg, L.P.,*
  298 F.R.D. 152 (S.D.N.Y. 2014) ......................................................................20

*Jackson v. Se. Pennsylvania Transp. Auth.,*
  260 F.R.D. 168 (E.D. Pa. 2009)........................................................................10

*Jenkins v. TJX Cos.,*
  853 F. Supp. 2d 317 (E.D.N.Y. 2012) ..............................................................19

*Johnston v. HBO Film Mgmt., Inc.,*
  265 F.3d 178 (3d Cir. 2001) .............................................................................14

*Limarvin v. Edo Rest. Corp.,*
  2013 WL 371571 (S.D.N.Y. Jan. 31, 2013) .....................................................22

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012) ...........................................................................8, 9

*Mielo v. Steak 'n Shake,*
  897 F.3d 467 (3d Cir. 2018) .............................................................................11

*In re Modafinil Antitrust Litig.,*
  837 F.3d 238 (3d Cir. 2016) ...............................................................................9

*Sheller v. City of Phila.,*
  288 F.R.D. 377 (E.D. Pa. 2013)..........................................................................9

*Simchon, et al. v. Highgate Hotels, L.P., et al.,*
  15-cv-01434 (RDM) (M.D. Pa.) ......................................................................17

*Sprague v. Gen. Motors Corp.,*
  133 F.3d 388 (6th Cir. 1998) ............................................................................13

*Stanislaw v. Erie Indem. Co.,*
  2009 WL 426641 (W.D. Pa. Feb. 20, 2009).....................................................18

*Tahir v. Avis Budget Group, Inc.,*
    2011 WL 1327861 (D.N.J. Apr. 6, 2011) ...........................................................17

*Tamay v. Mr. Kabob Rest., Inc.,*
    2016 WL 205456 (S.D.N.Y. Jan. 15, 2016) ......................................................22

*Viscomi v. Diner,*
    2016 WL 1255713 (E.D. Pa. Mar. 31, 2016) ....................................................17

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .................................................................................*passim*

*Webb v. Discovery Prop. & Casualty Ins. Co.,*
    2014 WL 105608 (M.D. Pa. Jan. 9, 2014) (Mariani, J.).......................................9

*White v. Rick Bus Co.,*
    743 F. Supp. 2d 380 (D.N.J. 2010) ....................................................................18

*Woodard v. FedEx Freight East, Inc.,*
    250 F.R.D. 178 (M.D. Pa. 2008) ........................................................................21

## Statutes

29 U.S.C. §216(b) .................................................................................................1, 6

29 U.S.C. §256(b) ...................................................................................................20

## Other Authorities

Fed. R. Civ. P. 23(a)............................................................................................8, 11

Defendants Highgate Hotels, L.P. ("Highgate") and Cove Haven, Inc. ("Cove Haven") (collectively, "Defendants") submit this memorandum of law in opposition to the motion for class/collective certification (the "Motion") filed by Plaintiffs Chelsea Henkel ("Henkel"), Lisa Hastings ("Hastings"), Leonora Mocerino, Craig Mocerino (together, the "Mocerinos"), and Lizeth Larkin ("Larkin") (collectively, "Plaintiffs").

## I.   PRELIMINARY STATEMENT

Plaintiffs' Motion cannot overcome their failure to furnish the evidentiary showing necessary to sustain it.  Plaintiffs' Rule 23 class certification application fails because Plaintiffs have not produced the evidentiary corroboration necessary to establish numerosity, commonality, typicality, or adequacy.  Plaintiffs' § 216(b) collective class certification application is equally deficient, as Plaintiffs cannot establish that they are similarly situated to the proposed collective they seek to represent, let alone similarly-situated to each other; nor can Plaintiffs mask the individualized inquiries that would permeate such a group.  As demonstrated below, Plaintiffs' total inability to carry their evidentiary burden necessitates the denial of their Motion.

## II.   FACTUAL BACKGROUND

## A.   STARWOOD'S MANAGEMENT OF THE RESORTS

Cove Haven, Paradise Stream, and Pocono Palace (collectively, the "Resort" or "Resorts") are all-inclusive properties, where, in return for paying the charges

and fees for the Resorts' all-inclusive package, guests receive lodging, meals, and access to various amenities, activities, and nightly entertainment offerings. (Defendants' Local Civil Rule 56.1 Statement (Docket No. 141) ("Defs. 56.1"), ¶ 1.)  The all-inclusive model of resort is designed so that, upon paying the cost of an all-inclusive package, guests need not concern themselves with continually paying for services – like food, amenities, and entertainment – as separate items during their stay.  (*Id.*, ¶ 2.)

In 1995, ITT purchased the Resorts from Caesar's World ("Caesar's"), which had owned and managed them since at least 1979.  (*Id.*, ¶ 3.)  In 1998, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") purchased the Resorts from ITT, and commenced managing them.  (*Id.*, ¶ 4.)

Starwood's management of the Resorts entailed, *inter alia*, setting the charges and fees for the all-inclusive package that accompanied a room reservation at the Resorts.  (*Id.*, ¶ 5.)  In so doing, Starwood continued Caesar's long-standing practice of including a mandatory charge identified as "gratuity" (the "Gratuity") as part of the cost of the all-inclusive package offered by the Resorts.  (*Id.*)  The cost of the Resorts' all-inclusive package thus consisted of (i) the rate of a room reservation, (ii) the Gratuity, and (iii) applicable taxes.  (*Id.*, ¶ 6.)  The Gratuity was never intended to be distributed to any Resort employees as a tip, and was

2

never distributed as such.  (*Id.*, ¶ 7.)  Instead, it was allocated internally as revenue, and used to fund, *inter alia*, wages and the upkeep of the amenities.  (*Id.*)

Starwood neither trained nor instructed employees that the Gratuity was tip money for any Resort employees (*Id.*, ¶ 8.)  Resort guests rarely asked front desk personnel about the Gratuity, and reservationists fielded general questions about its purpose on approximately 10% of calls from prospective customers.  (*Id.*, ¶ 9.)

## B.   **HIGHGATE'S MANAGEMENT OF THE RESORTS**

In October 2012, Rockpoint and Highgate purchased the Resorts from Starwood, and Highgate commenced sole and exclusive management of them (*Id.*, ¶ 10.)  In assuming management responsibility for the Resorts, Highgate succeeded Starwood as the employer of the Resorts' employees.  (*Id.*, ¶ 11.)

Highgate's management of the all-inclusive Resorts marked a departure from its historical practice of managing standalone hotels. (*Id.*, ¶ 12.)  Highgate recognized that its entrance into a new market entailed a "learning process," and thus opted to continue the policies and practices that Starwood – and the Resorts' employees – had observed during Starwood's 14-year period of management. (*Id.*, ¶ 13.)  Accordingly, Highgate continued Starwood's practices with respect to the charges and fees for the Resorts' all-inclusive packages, and thus maintained, *inter alia*, the Gratuity as part of the total package cost.  (*Id.*, ¶ 14.)  Highgate thus contracted with guests to provide the Resorts' all-inclusive packages in exchange

for the total package cost, including the Gratuity.  (*Id.*, ¶ 15.)  Highgate's contracts with its guests <u>never</u>: (i) identified the Gratuity as a tip for its employees; (ii) provided for the Gratuity to be distributed as a tip to its employees; or (iii) reflected any intent for the Gratuity to constitute a tip to be distributed to its employees.  (*Id.*)

Like Starwood, Highgate neither trained nor instructed employees that the Gratuity was tip money for any Resort employees.  (*Id.*, ¶ 16.)  As was the case during Starwood's management, Resort guests rarely asked front desk personnel or reservationists about the Gratuity.  (*Id.*, ¶ 17.)  As with Starwood, Highgate also continued to allocate the Gratuity as revenue, and used it to fund, *inter alia*, wages, the upkeep of amenities, and nightly entertainment.  (*Id.*, ¶ 18.)

Highgate's managerial, financial, operational, human resources, and marketing officers who worked at or in connection with the Resorts – whether based at the Resorts or elsewhere – understood that the Gratuity was never intended to be distributed to any Resort employees as a tip, was never distributed to any Resort employees as a tip, and was never planned or intended to be explained as a tip to guests.  (*Id.*, ¶¶ 19-27.)[1]

---

[1] Highgate's dealings and contractual relationship with Groupon, Inc. ("Groupon") – through which the Resorts received a significant portion of their business – further reflect its understanding that the Gratuity was a service charge.  (*Id.*, ¶¶ 28-29.)

While the Gratuity was never intended to be a tip for Resort employees and never distributed as such, certain front desk employees and reservationists mistakenly believed that the Gratuity was distributed directly to certain service employees as tips, and told guests the same. (*Id.*, ¶ 30.) These employees acknowledge that Highgate never represented to them that the Gratuity was distributed that way, nor trained or instructed them to tell guests that it was. (*Id.*, ¶ 31.) Any representation of a Highgate employee to a customer that the Gratuity was distributed to employees as tips was the result of that employee being misinformed, not an intent to deceive. (*Id.*, ¶ 32.)

In December 2015, The Packard Companies purchased the Resorts, and Highgate ceased managing them at that time. (*Id.*, ¶ 33.) During its period of management, Highgate ensured that its employees, including its servers, received at least $7.25 per hour, the applicable state and federal minimum wage. (*Id.*, 34.) Moreover, while Highgate paid all of the Resorts' servers on a piece rate basis, it ensured that all were paid in conformance with applicable state and federal law. *See* Affirmation of David B. Feldman, Esq., dated August 14, 2019 ("Feldman Aff."), Ex. 1 – Deposition of Anna Maria Olson dated March 28, 2019 at 10:01 – 11:13.

C.   **PLAINTIFFS' APPLICATION**

Plaintiffs' wage and hour claims are premised on, *inter alia*, Henkel's and the Mocerinos' lockstep contention that they were "required" to perform off-the-clock work.  *See* Feldman Aff., Ex. 2 – Deposition of Chelsea Henkel dated August 28, 2019 ("Henkel Dep.") at 16:09 – 16:11; Declaration of Craig Mocerino (Docket No. 132) ("C. Mocerino Dec."), ¶ 6; Declaration of Leonora Mocerino (Docket No. 131) ("L. Mocerino Dec."), ¶ 6.  Plaintiffs define their proposed class as follows:

> [A]ll persons who worked as servers at any one of Defendants' Resorts, to wit, Cove Haven Resort, Paradise Stream Resort, or Pocono Palace Resort, at any time between October 1, 2012 and January 31, 2016, as each and every one of the servers were denied all portions of the gratuity pursuant to the policies and practices of Defendants, and all such persons were paid on a piece rate basis *and performed off-the-clock work* pursuant to the policies and practices of Defendants, thus denying them minimum wages and overtime wages pursuant to the MWA [Pennsylvania Minimum Wage Act].

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class/Collective Certification Pursuant to Rule 23 of the Fed. R. Civ. Pro. and 29 U.S.C. §216(b) (Docket No. 127) ("Pls. Mem.") at 7-8 (emphasis added).

Although Plaintiffs define their proposed class and collective as including all servers who worked at any of Defendants' three resorts, they themselves worked only at Cove Haven, and premise their application on their observations of and purported conversations with unidentified servers who worked at Cove Haven.  *See*

Declaration of Lisa Hastings (Docket No. 130) ("Hastings Dec."), ¶ 10;
Declaration of Lizeth Larkin (Docket No. 133) ("Larkin Dec."); C. Mocerino Dec.,
¶ 10; L. Mocerino Dec., ¶ 10.  Plaintiffs do not and cannot, however, offer any
facts to suggest that servers at Paradise Stream or Pocono Palace were ever made
to perform off-the-clock work.  Nor can they even demonstrate that all Cove
Haven servers were made to perform such work, as Plaintiffs Hastings and Larkin,
both of whom worked exclusively at Cove Haven, testified otherwise.  Feldman
Aff., Ex. 3 – Deposition of Lisa Hastings dated August 29, 2018 ("Hastings Dep.")
at 32:21 – 33:07; Feldman Aff., Ex. 4 – Deposition of Lizeth Larkin dated March
29, 2019 ("Larkin Dep.") at 43:09 – 46:07.

## III.  ARGUMENT

## A.  PLAINTIFFS FAIL TO FURNISH THE PROOF NECESSARY TO CERTIFY THEIR PROPOSED CLASS

The party seeking class certification bears the burden of establishing each of
the four requirements of Rule 23(a) and at least one of the requirements of Rule
23(b).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Each of these
elements must be proven through sufficient *evidence*.  *Comcast Corp. v. Behrend*,
569 U.S. 27, 33 (2013).  "Rule 23 does not set forth a mere pleading standard.  A
party seeking class certification must affirmatively demonstrate his compliance
with the Rule."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

Moreover, the trial court must rigorously analyze whether the party moving for class certification has met its burden under Rule 23. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2009); *see also Dukes*, 131 S. Ct. at 2551 (requiring "rigorous analysis … that the prerequisites of Rule 23(a) have been satisfied") (emphasis in original). Such "rigorous analysis" will frequently entail some overlap with the merits of the plaintiff's underlying claims. *Dukes*, 131 S. Ct. at 2551.

As discussed in detail below, an examination of the evidence reveals that Plaintiffs have not met their burden to prove the essential prerequisites of Rule 23(a) by a preponderance of the evidence.

### 1.      Plaintiffs Have Failed to Prove Numerosity

A putative class may only be certified if, based on a preponderance of the evidence, it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no such evidentiary showing here. While Rule 23 does not require direct evidence of the exact number of class members, a plaintiff must, at the very least, show sufficient circumstantial evidence specific to the problems, parties, and geographic areas actually covered by a class definition to allow the court to make factual findings respecting numerosity. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012). "Common-sense, guesswork, or even reliance on what the Third Circuit called 'a bet worth making' cannot circumvent

Plaintiffs' burden to show sufficient evidence of numerosity." *Webb v. Discovery Prop. & Casualty Ins. Co.*, 2014 WL 105608, at *4 (M.D. Pa. Jan. 9, 2014) (Mariani, J.).  Mere speculation is plainly insufficient.  *Marcus*, 687 F.3d at 596. In the present case, Plaintiffs fail to provide direct evidence and fail to provide sufficient circumstantial evidence on which even an estimate of the number of class members can be rationally based.

Plaintiffs' only "showing" here consists of boilerplate statements in Declarations filed by Hastings, Larkin, and the Mocerinos that "[d]uring my employment with defendants, about 20 individuals worked per week as servers; however, there was a significant amount of turnover."  *See* Hastings Dec., ¶ 9; L. Mocerino Dec., ¶ 9; C. Mocerino Dec., ¶ 9; Larkin Dec., ¶ 9.  Those statements are incapable of establishing numerosity – and thus do not remotely constitute the evidentiary showing required in this Circuit.  *See, e.g.*, *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 258 (3d Cir. 2016) (holding that lower court abused its discretion in finding numerosity for a class of twenty-two members, and directing it "to conduct a rigorous numerosity analysis" on remand).

Indeed, the Court of Appeals for the Third Circuit has made clear that such speculation does not constitute or meet the preponderance of the evidence standard (*Marcus,* 687 F.3d at 596), and district courts have rejected such speculation in denying numerosity.  *See, e.g.*, *Sheller v. City of Phila.,* 288 F.R.D. 377, 383 (E.D.

Pa. 2013) (speculative, conclusory and common sense assertions that Parking Authority stopped and towed thousands of cars of innocent parties insufficient to establish numerosity); *Jackson v. Se. Pennsylvania Transp. Auth.*, 260 F.R.D. 168, 187 (E.D. Pa. 2009).

That Plaintiffs' counsel attests to having "identified 46 employees who worked as servers" through a review of unspecified records "from the Cove Haven Resort between October 2012 and July 2014" (Declaration of Matthew J. Blit (Docket No. 128), ¶ 10), is of no consequence.  Notwithstanding that Plaintiffs' counsel's representation purports to concern (i) employees of only one of three properties for which Plaintiffs seek certification, and (ii) only twenty-one months of the forty-month period for which Plaintiffs seek certification, the representation does not constitute evidence in this case, and thus fails to establish numerosity. Plaintiffs' numerosity argument is dependent and rests solely on their deficient, boilerplate declarations.  Such scant evidence cannot establish numerosity absent the aid of speculation.  *Hayes v. Wal-Mart Stores*, 725 F.3d 349, 357 (3d Cir. 2013).   Plaintiffs' failure to satisfy the mandate in *Dukes* to "affirmatively demonstrate" compliance with this Rule 23 requirement (*Dukes*, 564 U.S. at 350) necessitates the denial of their class certification bid.

### 2.     Plaintiffs Have Failed to Prove Commonality

Plaintiffs also must prove that "there are questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   In *Dukes*, the Supreme Court held: "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Dukes*, 131 S. Ct. at 2551 (omitting citation and internal quotation marks).   "This does not mean merely that they have all suffered a violation of the same provision of law."  *Id.*   Rather, there must be "cause to believe that all their claims *can productively be litigated at once.*"  *Id.* (emphasis added).

The commonality requirement is "easy to misread, since any competently crafted class complaint literally raises common questions."  *Mielo v. Steak 'n Shake*, 897 F.3d 467, 487 (3d Cir. 2018).  But the "mere recital of questions that happen to be shared by class members is not sufficient to obtain class certification;" instead, a plaintiff must "demonstrate that the class members have suffered the same injury."  *Id.*  Plaintiffs have failed to make the requisite showing here.

Indeed, despite the breadth of their proposed class – which includes "all persons" who worked at three different resorts, Cove Haven, Paradise Stream, and Pocono Palace, and who, *inter alia*, "performed off-the-clock work" – Plaintiffs' declarations confirm that they worked exclusively at Cove Haven, and they

premise their application on (i) their purported experiences at that resort, and (ii) their observations of and purported conversations with unidentified servers who worked at Cove Haven. *See* Declaration of Chelsea Henkel dated June 11, 2019 (Docket No. 129) ("Henkel Dec. No. 1"), ¶¶ 1 (attesting to having worked for Defendants "at their [Cove Haven] resort located at 194 Lakeview Drive, Lakeville, Pennyslvania."), 10; Hastings Dec., ¶¶ 1, 10 (same); Larkin Dec., ¶¶ 1, 10 (same); C. Mocerino Dec., ¶¶ 1, 10 (same); L. Mocerino Dec., ¶¶ 1, 10 (same). Even assuming *arguendo* that Plaintiffs can establish that servers at each Resort were paid on a piece-rate basis, Plaintiffs do not and cannot offer any facts demonstrating that servers at Paradise Stream or Pocono Palace were made to perform off-the-clock work to justify their minimum wage/overtime claims, as Plaintiffs initially but falsely represented was required at Cove Haven. The *Dukes* Court specifically rejected such speculative leaps, noting instead that a plaintiff must show "significant proof" of an unlawful policy with class members having suffered the same injury to establish commonality. *Dukes*, 131 S. Ct. at 2551. Plaintiffs' failure to furnish any such proof with respect to servers at Pocono Palace, Paradise Stream, or even Cove Haven forecloses them from certifying such a class.[2]

---

[2] For the same reasons, Plaintiffs' application also fails to satisfy the "far more demanding" predominance requirement of Rule 23(b). *Amchem*, 521 U.S. at 615.

### 3.      Plaintiffs Have Failed to Prove Typicality

Rule 23(a)(3) requires that a class plaintiff's claims are typical of the claims

of the putative class.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58 (1982).

Typicality is not established if a named plaintiff who proves his or her own claim

will not necessarily have proven the claims of the class.  *Sprague v. Gen. Motors*

*Corp*., 133 F.3d 388, 399 (6th Cir. 1998).

Here, Plaintiffs' claims are not typical of the other class members they seek

to represent.  First, as set forth *supra*, Plaintiffs worked only at one of the three

resorts whose servers they seek to join with their proposed class.   Although

Plaintiffs define their proposed class as including, *inter alia*, all servers at Cove

Haven, Paradise Stream, and Pocono Palace who performed off-the-clock work,

they offer no proof to suggest that any servers at Paradise Stream or Pocono Palace

performed such work – a critical evidentiary failure that undermines typicality as

much as it does commonality.  Moreover, as previously noted, even with regard to

Cove Haven, Plaintiffs offer intrinsically inconsistent and contradictory accounts

of their respective experiences there.

Second, even if Plaintiffs' failure to furnish such evidence with respect to

Paradise Stream and Pocono Palace did not foreclose them from establishing

typicality, Henkel, at a minimum, is incapable of doing so because she herself fails

to qualify as a member of the class she purports to represent.  Indeed, although

Plaintiffs define their proposed class as including "all persons who worked as servers at any one of Defendants' Resorts," Henkel's declaration makes plain that she worked as a café attendant – an entirely different position that falls outside of Plaintiffs' own proposed class.  *See* Henkel Dec. No. 1, ¶ 2.  The café attendant position is not only distinct from the server position, it falls under the scope of an entirely different department; whereas the café attendant is part of the Resort's Outlet 1 Department, the server position is part of its Banquet Department. (Declaration of Anna Marie Olson ("Olson Dec."), ¶ 6.)

Henkel's inability to qualify for her own proposed class is exacerbated by her testimony that she does not even know the basis of the minimum wage claim she purports to assert on behalf of the proposed class.  (Henkel Dep. at 64:10 – 67:08.)  Hastings likewise testified as to having no knowledge of the basis of that claim.  (Hastings Dep. at 32:09 – 32:15; 57:06 – 57:08.)  As these Plaintiffs are unable to identify the bases of their claims, they are plainly incapable from establishing their claims as typical of those of the proposed class.

### 4.      Henkel Has Failed to Prove Adequacy

Rule 23(a)(4) requires Plaintiffs to establish that they can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In analyzing these criteria, the court must determine whether the representatives' interests conflict with those of the class. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178,

185 (3d Cir. 2001). "On the question of whether the plaintiff has interests antagonistic to those of the class, courts often evaluate attacks on the named plaintiff's credibility." *Coyle v. Hornell Brewing Co.*, 2011 WL 2147218, at *3 (May 26, 2011 D.N.J.) Henkel's inconsistent allegations and testimony regarding her position at Cove Haven render her an inadequate class representative here. *See id.* (noting that "significant or core misrepresentations by the named plaintiff undermines the adequacy of that plaintiff to represent the class").

Indeed, in Plaintiffs' papers in support of their applications for class and collective certification, Henkel submits sworn testimony in which she alternately: (i) identified her position as café attendant, which is part of the Resort's Outlet 1 Department, as opposed to a server position, which is part of the Banquets Department; (ii) claimed to be a member of the proposed class of servers, despite having identified her position as café attendant; and (iii) only recently claimed to be a member of the proposed class of housekeeping attendants in the Housekeeping Department for purposes of a certification application on behalf of that group, despite working as a housekeeping attendant for only one day of her employment with Highgate, and never even referencing having worked as a housekeeping attendant while testifying about jobs she performed in her first declaration and at her deposition. *See* Henkel Dec. No. 1, ¶ 2 (testifying that "[f]rom February 2012 until this time, I have worked as a café attendant"); Henkel

Dep. at 9:23 – 10:06 (omitting any mention of having worked as a housekeeping attendant in testifying about the type of work she performed at Cove Haven); Declaration of Chelsea Henkel dated June 14, 2019 (Docket No. 138) ("Henkel Dec. No. 2"), ¶ 2 (testifying that she "worked as a housekeeper/attendant" "[o]n numerous occasions"); Olson Dec., ¶ 7 (noting that Henkel worked as a housekeeper attendant "on only one date" during her employment). Henkel's alternate claims are not only irreconcilable, but also fatally undermine her credibility and adequacy to represent absent class members here. *Coyle*, 2011 WL 2147218, at *3-6.

Hastings suffers from similar credibility and adequacy defects, as evidenced by her conflicting sworn statements. Hastings' boilerplate declaration parrots those of the Mocerinos in stating that she was required to perform off-the-clock work at Cove Haven. Hastings Dec., ¶ 6. But when testifying under oath at her deposition, Hastings made plain that she had never been made to perform such work. (Hastings Dep. at 32:21 – 33:07.) Hastings' conflicting testimony not only dooms her adequacy showing, but exemplifies the inconsistent, contradictory statements that plague Plaintiffs' deficient evidentiary showing.[3]

---

[3] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) tolls the statute of limitations during the pendency of a putative class action. It does not, however, permit the maintenance of a subsequent class action beyond the statute of limitations. *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1801 (2018).

**B.      PLAINTIFFS FAIL TO FURNISH THE PROOF NECESSARY
         TO OBTAIN COLLECTIVE CLASS CERTIFICATION**

When a collective class certification motion is filed "at a point in the litigation in which the factual record is completely developed . . . the stricter standard should be applied in analyzing whether the named plaintiff[s] ha[ve] demonstrated that [they are] similarly situated to the putative class members." *Tahir v. Avis Budget Group, Inc.*, 2011 WL 1327861, at *2 (D.N.J. Apr. 6, 2011) (because discovery was completed before the filing of plaintiff's motion for collective class certification, "it [was] appropriate for the Court to apply a stricter standard in its analysis of the questions before it")).  In this second stage of analysis, "after discovery is complete, the court conducts a 'factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action.'"  *Viscomi v. Diner*, 2016 WL 1255713, at *3 (E.D. Pa. Mar. 31, 2016).  This "second-stage determination 'requires a higher level of proof than was necessary at the first stage for conditional certification.'"  *Id.*

Here, the parties have completed extensive discovery in this and the related action Simchon, et al. v. Highgate Hotels, L.P., et al., 15-cv-01434 (RDM) (M.D.

---

Accordingly, if this Court denies Plaintiffs' Motion, putative class members may not commence a class action anew beyond the time allowed by the applicable statute of limitations. *Id.* at 1805-11.

Pa.), including, *inter alia*, thirty-five depositions. As the discovery period concluded on May 31, 2019, the Court should apply the higher evidentiary standard to Plaintiffs' application, and require Plaintiffs to furnish the necessary proof that they are similarly situated to each other and to the members of the proposed collective. Plaintiffs' fundamental inability to establish themselves as similarly situated, let alone those they seek to represent, regardless of the evidentiary standard applied to their claims, dooms their application here. Indeed, courts have routinely denied collective class certification where, as here, plaintiffs fail to provide sufficient evidence that shows that they are similarly situated to their proposed collective. *See, e.g.*, *Bond v. Nat'l City Bank of Penn.*, 2006 WL 1744474, at * 1 (W.D. Pa. June 22, 2006) (denying collective class certification because plaintiffs failed to show that the named plaintiffs were similarly situated and did not show that the prospective plaintiffs were together victims of an unlawful policy); *Stanislaw v. Erie Indem. Co.*, 2009 WL 426641, at *2 (W.D. Pa. Feb. 20, 2009) (denying collective class certification because plaintiff offered "no first-hand evidence from any other employee alleging in their own words that these practices were regularly applied); *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 388 (D.N.J. 2010) (plaintiff's "conclusory statement that other similarly situated employees" were harmed was insufficient to obtain certification because it did not show that other employees were similarly situated, and that they were affected by

the company's policy); *Holesapple v. E-MortgageMgmt, LLC*, 2011 WL 6887684, at *6 (D.N.J. Dec. 29, 2011) (holding that "vague, non-specific, and conclusory allegations" fail to establish the required factual nexus).  Plaintiffs fail to satisfy their burden here.

### 1.    Plaintiffs Fail to Show That They Are Similarly Situated to Each Other or to the Members of Their Proposed Collective

At the collective class certification stage, the Court must find "'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims' of a particular practice." *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012).  Plaintiffs ask this Court to certify a collective of *all* servers who worked at any of the three Resorts, despite furnishing no evidence that any server at Pocono Palace or Paradise Stream was made to perform off-the-clock work, as certain but not all Plaintiffs purportedly were at Cove Haven.  Plaintiffs – who only offer facts concerning their own alleged experiences at Cove Haven – do not and cannot offer any such evidence with respect to those members of the Proposed Collective who worked elsewhere.  That evidentiary failure forecloses them from establishing any factual nexus between themselves and the broad Proposed Collective they seek to represent.

### 2.    Individualized Inquiries Within the Proposed Collective Class Would Permeate This Action

Courts will typically deny collective class certification where, as here,

adjudicating Plaintiffs' claims and those of the proposed collective would require individualized analysis and inquiry.  *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 387 (2d Cir. 2015) (vacating district court order certifying collective class due to individualized inquiries necessary to resolve claims).  Here, there are significant issues that need to be determined on an individualized basis with respect to each person in the proposed collective, most critically whether each server was "required" to perform off-the-clock work thereby triggering and justifying minimum wage and overtime claims.  As noted *supra*, while Henkel and the Mocerinos claim to have been made to perform such work, Larkin and Hastings do not.  Nor do Plaintiffs furnish any evidence to suggest that any server at Paradise Stream or Pocono Palace were made to perform such work.  Whether any server was required to perform such work is thus a specific factual inquiry unique to each individual server.   The inevitable plethora of individualized inquiries inextricably intertwined with Plaintiffs' application presents a separate, independent basis for denying it.

### 3.  The Court Should Deny Plaintiffs' Request for Equitable Tolling

In an FLSA collective action, the limitations period continues to run for each prospective plaintiff until he or she files a written consent to join the lawsuit with the court.  *See, e.g.*, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing 29 U.S.C. § 256(b)).   While equitable tolling permits a court to

extend a statute of limitations, the Supreme Court has made plain that federal courts should grant such tolling "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Indeed, it is a "drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (affirming denial of equitable tolling); *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 192 (M.D. Pa. 2008) (noting that equitable tolling is warranted only in "extraordinary circumstance[s]").

Plaintiffs do not and cannot establish the extraordinary circumstances necessary to justify equitable tolling here.  A motion for collective class certification is part of the ordinary course of every FLSA collective action. Plaintiffs fail to explain how this ordinary procedural step generates the type of extraordinary circumstances necessary to trigger equitable tolling.  The Court should reject Plaintiffs' invitation to ignore the Supreme Court's and this Court's guidance that equitable tolling is reserved for only those cases involving extraordinary circumstances, none of which exists here.

## C.   <u>PLAINTIFFS' PROPOSED NOTICE SHOULD BE REJECTED</u>

Notwithstanding the arguments and evidentiary documentation presented and referenced by Defendants, if the Court were to grant Plaintiffs' Motion, it is respectfully submitted that the Court direct the parties to meet and confer over the content and form of the notice and submit the same for Court approval.  *See, e.g.*,

*Tamay v. Mr. Kabob Rest., Inc.*, 2016 WL 205456, at *2 (S.D.N.Y. Jan. 15, 2016) (directing parties to meet and confer over form and substance of notice).[4]  The parties should be afforded thirty days to negotiate an appropriate, accurate notice – a practice widely employed in class/collective actions such as this – should notice be authorized.  *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 199 (N.D.N.Y. 2009).  Should those efforts fail, Defendants propose that opposing counsel cross-file proposed notice forms from which the Court will determine an appropriate notice.  *Hintergerger v. Catholic Health Sys.*, 2009 WL 3464134, at *11-12 (W.D.N.Y. Oct. 21, 2009).

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that the Court should deny Plaintiffs' Motion in its entirety.

---

[4] Indeed, as it stands, Plaintiffs' proposed notice suffers from several defects, including, *inter alia*, its failure to set forth the contact information for Defendants' counsel.  *See, e.g.*, *Limarvin v. Edo Rest. Corp.*, 2013 WL 371571, at *2 (S.D.N.Y. Jan. 31, 2013).

Dated:  August 14, 2019

Respectfully submitted,

*/s/ David B. Feldman*

David B. Feldman, Admitted *Pro Hac Vice*
Evan B. Citron, Admitted *Pro Hac Vice*
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
599 Lexington Avenue, 17th Floor
New York, NY 10022
(212) 492-2500 (phone)
(212) 492-2501 (fax)
david.feldman@ogletree.com
evan.citron@ogletree.com

*Attorneys for Defendants*
*Highgate Hotels, L.P. and Cove Haven, Inc.*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that, as required by LR 7.8, Defendants' Memorandum of Law In Opposition to Plaintiffs' Motion for Certification Pursuant to Rule 23 of Fed.R.Civ.Pro. and 29 U.S.C. Section 216(b) does not exceed 5,000 words. Rather, the word count, exclusive of the caption, tables of contents and authorities, certificates of compliance and service, and signature block, is 4,998 words per the word count feature of the word-processing system used to prepare brief.

Dated:  August 14, 2019

*/s/ David B. Feldman*
David B. Feldman
Attorney for Defendants
