## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHELSEA HENKEL, *et al.*, on behalf of:     Civil No. 3:15-CV-01435
herself and others similarly situated,    :
                            :
        Plaintiff,          :
                            :
        v.               :
                            :
HIGHGATE HOTELS, LP, *et al.*,       :
                            :
        Defendants.       :    Judge Jennifer P. Wilson

## MEMORANDUM

Before the court are Plaintiff Chelsea Henkel's ("Henkel")[1] motions for class certification and conditional collective certification pursuant to Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), respectively. (Docs. 126, 135.)  Henkel seeks to certify two classes under Rule 23, one for servers employed at any of Defendants' resorts between October 1, 2012 and January 31, 2016, and one for housekeepers employed at any of Defendants'

---

[1] The court notes that throughout the parties' filings, they refer to the putative collective and class members as "Plaintiffs" in this action.  This label is premature at this stage of the proceedings since these individuals have not yet achieved party status.  Under Federal Rule of Civil Procedure 23, "unnamed class members in Rule 23 class actions do not" have party status, and for purposes of an FLSA collective action, opt-in parties do not assume named party status unless and until the court certifies the collective.  *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 225–26 (3d Cir. 2016) (noting that "[i]f a collective action is decertified at the final stage, . . . the court will decertify the class, dismiss the opt-in plaintiffs without prejudice, and permit the named plaintiffs to proceed to trial").  Thus, simply filing a notice on the docket that putative collective and class members have opted into this litigation does not confer named party status upon them unless and until these groups have received final certification.  For this reason, the court will refer to the only named Plaintiff in this case, Henkel, when describing the putative classes' and collective's claims.

resorts between October 1, 2012 and January 31, 2016.[2]  (*Id.*)  In addition, Henkel

moves to conditionally certify a collective under the FLSA of servers allegedly

denied overtime wages by Defendants who worked at any of Defendants' resorts

any time between October 1, 2012 and January 31, 2016.[3]  (Doc. 126.)  The court

finds that Henkel has satisfied the requirements under Rule 23, and that these class

actions may proceed as such.  In contrast, the court finds that Henkel is not

similarly situated to the opt-in plaintiffs for purposes of collective resolution, and

that a collective action under the FLSA is inappropriate here.  For the reasons that

follow, the court will grant Henkel's motion as to both putative Rule 23 classes,

but will deny the motion to conditionally certify the FLSA collective.

## PROCEDURAL HISTORY

Henkel initiated this action via a collective and class action complaint on

July 23, 2015, against Defendants Highgate Hotels, LP ("Highgate") and Cove

Haven, Inc. ("Cove Haven") (collectively, "Defendants").  (Doc. 1.)  Henkel

amended her complaint as of right on October 2, 2015, and Defendants responded

---

[2] Henkel seeks to certify these classes to pursue counts 3 through 8 of the fourth amended complaint.  However, because the court's summary judgment ruling foreclosed all but count 7 from progressing in this case, Henkel may only seek to certify the putative class to pursue the claim in count 7 of the complaint—unjust enrichment.  (Doc. 178.)

[3] Henkel seeks to conditionally certify this collective to pursue counts 1 and 2 of the fourth amended complaint.  However, because the court's summary judgment ruling foreclosed count 1 from progressing in this case, Henkel may only seek to conditionally certify the putative collective to pursue the claim in count 2 of the complaint—unpaid overtime wages under the FLSA.  (Doc. 178.)

by filing a motion to dismiss.  (Docs. 12, 16.)  Once ripe, the court granted

Defendants' motion to dismiss on November 20, 2016, and permitted Henkel to

file an amended complaint.  (Doc. 46.)  Shortly after Henkel filed a second

amended complaint, the parties stipulated to permit Henkel to file a third amended

complaint.  (Docs. 47, 48, 50.)  Henkel filed her third amended complaint on

October 24, 2016.  (Doc. 49.)

By September 7, 2017, over thirty other individuals had opted in as putative

collective members in this case.  (*See* Docs. 56, 57, 60, 64.)  On October 4, 2017,

Henkel moved to amend or correct the complaint, and on December 7, 2017, she

filed a motion to certify the classes and conditionally certify a collective.  (Docs.

66, 77.)  Following multiple requests for extension of time for discovery and to file

briefs, the court granted Henkel's motion to amend or correct her complaint and

Henkel filed her fourth amended complaint on November 14, 2018.  (Docs. 108,

109, 110.)

In the fourth amended complaint, which is the operative complaint, Henkel

set forth eight claims against Defendants: unpaid minimum wages in violation of

the FLSA (Count 1); unpaid overtime wages in violation of the FLSA (Count 2);

unpaid minimum wages in violation of the Pennsylvania Minimum Wage Act

("MWA") (Count 3); unpaid overtime wages in violation of the MWA (Count 4);

breach of contract to an express third-party beneficiary (Count 5); breach of

contract to an intended third-party beneficiary (Count 6); unjust enrichment (Count 7); and conversion (Count 8). (Doc. 110.) Defendants answered the fourth amended complaint on November 29, 2018. (Doc. 111.)

Thereafter, the parties requested another extension of time to complete discovery and for Defendants to respond to Henkel's motion for class certification and conditional collective certification. (Doc. 115.) On February 21, 2019, the court, expressing its frustration with the continual requests for extension of time given the age of this case, granted the motion to extend discovery deadlines but denied Henkel's motion for conditional collective and class certification without prejudice. (Doc. 117.)

On June 11, 2019 and June 14, 2019, Henkel filed renewed motions to certify a class and to conditionally certify a collective of servers, as well as a motion for class certification of housekeeper attendants, the instant motions before the court. (Docs. 126, 135.) Defendants filed briefs in opposition on August 14, 2019, noting that Henkel had failed to include the factual support necessary to support her motions for certification. (Docs. 148, 151.) Henkel timely filed reply briefs, including attached exhibits purporting to respond to Defendants' arguments in their opposition briefs and bolster her motions for certification, contrary to the local rules. (Docs. 155, 160.) The court, noting that Defendants had not had the opportunity to address these additional exhibits, entered an order on February 26,

2021 affording Defendants the opportunity to file sur-reply briefs to respond to Henkel's exhibits, noting that if Defendants chose not to file such briefs that the court would consider the entire record filed in support of Henkel's motions without the benefit of Defendants' additional briefing. (Doc. 182.) Defendants timely filed sur-reply briefs in accordance with the court's order. (Docs. 189, 190.)

Defendants also filed a motion for partial summary judgment on June 14, 2019. (Doc. 139.) This case was reassigned to the undersigned on November 15, 2019. Thereafter, the parties informally requested that the court stay any decision on the pending motions as the parties were engaged in settlement negotiations. After the parties reported to the court that a settlement could not be reached, they requested that the court address the fully briefed and ripe motion for partial summary judgment before turning to the ripe motions for conditional collective certification and class certification. The court ruled on the motion for partial summary judgment on November 25, 2020, granting summary judgment as to all but Henkel's claim for unjust enrichment.[4] (Doc. 178.) Thus, the court now turns to the motions for class certification and conditional collective certification.

---

[4] Neither party moved for summary judgment on count 2 of the complaint—the claim for unpaid overtime wages under the FLSA. Thus, the court has not had the opportunity to consider the merits of this issue.

## FACTUAL BACKGROUND

The court detailed the factual background of this case at length in its memorandum on Defendants' motion for partial summary judgment. As such, the court recites only the facts necessary for understanding the present motions for conditional certification of the collective and certification of the classes.

### A.   Unjust Enrichment

As explained in the court's memorandum resolving the partial summary judgment motion, Defendants own and operate Cove Haven, Paradise Stream, and Pocono Palace (collectively, "the Resorts"), which offer all-inclusive stays where guests receive lodging, meals, and access to amenities, activities, and entertainment for a package charge. (Doc. 178, p. 4.)[5] This all-inclusive package cost at the Resorts consisted of the room rate, gratuity, a resort fee, and applicable taxes. (*Id.* at 5.) The definition of the gratuity that was charged to guests as part of the all-inclusive package and the nature of the communication to guests regarding the gratuity remain critical facts in this case. (*Id.* at 7.) With respect to these critical facts, the parties agree that the gratuity was allocated internally as revenue and was never distributed to the Resort employees as a gratuity. (*Id.*) However, the parties disagree regarding nearly all other aspects of the gratuity. (*Id.*) For purposes of this memorandum, it is unnecessary to rehash these arguments below,

---

[5] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

and the court refers to its earlier decision on partial summary judgment for further context.  (*See* Doc. 178.)

### B.    Unpaid Overtime Wages Under the FLSA

Henkel alleges that while working for Defendants, she was denied overtime wages to which she was otherwise entitled.  (Doc. 110, pp. 2, 5–6.)  Likewise, the allegations in the complaint state that all servers and housekeepers employed by Defendants were denied overtime wages to which they were otherwise entitled. (Doc. 1, ¶¶ 22, 24–29.)  Specifically, the complaint states that:

> Defendants engaged in the unlawful employment practice of denying minimum wages and overtime wages to servers, who Defendants pay on a piecework basis; specifically, a sum per guest served.

> As a result of being compensated on a piecework basis, Plaintiffs were, at times during the applicable statutory period, denied minimum wages due to being assigned too few guests during their shift.

> At times, servers, including Plaintiffs, were required to clock out at the end of their shift and continue working, which resulted in the loss of minimum wages and overtime wages.

> Servers, including Plaintiffs, were required to clock out between shifts and continue working, which resulted in the loss of minimum wages and overtime wages.

> Servers, including Plaintiffs, worked in excess of 40 hours per week, but were denied overtime wages as a result of Defendants compensating them on a piecework basis.

(*Id.* ¶¶ 24–28.)

Because the court finds that there are meaningful differences between Henkel and the opt-in Plaintiffs, the court includes a brief discussion of each below.

### 1.      Named Plaintiff Chelsea Henkel

Henkel commenced her employment with Defendants some time around February 2012 working primarily in the café department, and working elsewhere when needed, including as a server, hostess, photographer, gift shop employee, housekeeper, and anywhere else that was short-staffed.  (Doc. 128-8, p. 9; Doc. 129; Doc. 149-1; Doc. 156-10, pp. 32, 52, 71.)  In particular, Henkel testified that she worked "primarily, if not exclusively," in the café department, and that she worked elsewhere "aberrationally [sic] to fill gaps."  (Doc. 156-10, p. 32.)  Henkel testified that the café department was her "home department" where she would clock in and out when working in the café or other departments.  (Doc. 128-8, p. 10; Doc. 156-10, pp. 11, 71.)  Regardless of where she worked, however, Henkel testified that she was always a part-time employee to enable her to attend school.  (Doc. 128-8, p. 13; Doc. 156-10, p. 14.)

As part of her job, Henkel occasionally worked split shifts, where she worked a partial shift, followed by a break, and then another scheduled work period.  (Doc. 128-8, pp. 14–15.)  Henkel alleges that roughly once per week, she

was expected to continue working after she had clocked out from her first shift, but that she was not paid for this time. (*Id.* at 14–15, 20; Doc. 156-10, p. 17.)

### 2. Opt-In Plaintiffs

As detailed above, several individuals have opted into this litigation.[6] From the declarations submitted in support of the motion for collective certification, three of these opt-in Plaintiffs alleged that, like Henkel, they were required to perform work after they had clocked out. (*See, e.g.*, Doc. 130, p. 2; Doc. 131, p. 2; Doc. 132, p. 2.) In addition, four claimed to have worked over 40 hours per week, depending on the season. (*See, e.g.*, Doc. 130, p. 1; Doc. 131, p. 1; Doc. 132, p. 1; Doc. 133, p. 1.) In all declarations, servers alleged that they were paid on a per head basis, rather than an hourly wage, though only some alleged that this payment method caused them to lose overtime wages. (*See, e.g.*, Doc. 130, pp. 1–2; Doc. 131, pp. 1–2; Doc. 132, pp. 1–2; Doc. 133, pp. 1–2; Doc. 157; Doc. 158; Doc. 159.)

---

[6] The fourth amended complaint lists the following individuals as Plaintiffs in this action: Chelsea Henkel, Lisa Hastings, Leonora Mocerino, Craig Mocerino, Lizeth Larkin, Noelle Androne, Tammy Bradley, Christopher Carroll, Christopher Colella, Dennis Considine, Ganesa Culic, Milan Culic, Michael Czartosieski, Veronica Gibbons, Susan Gruber, Jessica Guratosky, Veronica Harr, Jenna Hastings, Desiree Herzog, Robyn Klim, Gena Kline, April Lescio, Christina Lombardi, Jocelyn Loriz, Jose Matos, Rebecca Morris, Joyce Parola, John Rodriguez, Erin Schuman, Paula Strada, Blake Suhr, Katie Wasco-Hynak, Mark Wolff, Peter Ventimiglia, and Heather Yeager. (Doc. 110, p. 1.)

### 3.    Defendants' Payroll Manager

In addition to Henkel and the opt-in Plaintiffs, Defendants' payroll manager, Anna Maria Olson ("Olson") offered testimony in this case regarding how employees were paid by Defendants.  Olson testified that kitchen staff include "dishwashers, cashiers, bartender[s], servers, cocktail servers, runners, [and] bussers."  (Doc. 128-3, p. 9.)  According to Olson, individuals working in the kitchen were paid by the hour and were eligible for overtime pay.[7]  (*Id.*)  In contrast, banquet servers were paid on a per head basis and were ineligible for overtime based on the 7(i) exemption under the FLSA.  (*Id.* at 10, 15.)  Olson also declared that the café department, and the café attendant position in which Henkel worked, "is separate and distinct from . . . the Banquet Department."[8]  (Doc. 149, p. 2.)

**JURISDICTION**

Because this case raises a question under federal law through the FLSA, the court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Further, venue is appropriate under 28 U.S.C. § 1391.

---

[7] It is unclear to the court whether servers working as part of the kitchen staff were classified as exempt from overtime.

[8] It is unclear from the record how café attendants were classified vis-à-vis the FLSA.

10

STANDARD OF REVIEW

**A. Class Certification Under Federal Rule of Civil Procedure 23**

Every putative class action brought in federal court must satisfy the

requirements of Federal Rule of Civil Procedure 23(a).  *Gonzalez v. Owens*

*Corning*, 885 F.3d 186, 192 (3d Cir. 2018) (citing *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 613 (1997)).  These requirements mandate that:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In other words, a putative class must meet the elements of

numerosity, commonality, typicality, and adequacy.  *Gonzalez*, 885 F.3d at 192.

"The party seeking certification bears the burden of establishing each element of

Rule 23 by a preponderance of the evidence."  *Id.*  Thus, certification is proper

only where "the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied."  *Id.* (quoting *Gen. Tel. Co. of the*

*Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (quotation marks omitted)).

In addition to satisfying the Rule 23(a) requirements, a putative class must

also fit within one of the categories of class actions enumerated in Rule 23(b).

Fed. R. Civ. P. 23(b).  In this case, Henkel has defined the putative class as a Rule

23(b)(3) class, which is a category where "questions of law or fact common to

class members predominate over any questions affecting only individual members,

and [where the] class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Thus, the

putative class must also satisfy the elements of predominance and superiority.

*Gonzalez*, 885 F.3d at 192.

### B. Conditional Collective Certification Regarding the FLSA Claim

Under the FLSA, employers are obligated to pay employees a minimum of

one and a half times their rate of pay for all hours worked in excess of forty hours

per week.  *See generally* 29 U.S.C. § 201, *et seq*.  As an enforcement mechanism

for employers who do not comply with these responsibilities, the FLSA allows an

employee to bring an action "for and in behalf of himself or themselves and other

employees similarly situated."  29 U.S.C. § 216(b).

Employees choosing to bring an action on behalf of themselves and others

may bring a collective action in which they face two hurdles before such action

may proceed under the FLSA.  *See Symczyk v. Genesis Healthcare Corp.*, 656 F.3d

189, 192 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013).  This

two-step procedure is not contained within the FLSA.  However, it has been

endorsed by the Third Circuit as the proper approach for collective certification

analysis. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (citing *Symczyk*, 656 F.3d at 193 n.5).

### 1.    First Step of the Certification Analysis

First, the court must ascertain whether the putative collective is similarly situated to the named plaintiff. *Id.* In other words, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Id.* at 193 (citing *Smith v. Sovereign Bancorp, Inc.*, No. 03-2420, 2003 U.S. Dist. LEXIS 21010, at *10 (E.D. Pa. Nov. 13, 2003)). Courts in this circuit have described this burden as a "modest factual showing" in which the court exercises its discretion to enable the parties to send notice to potential collective members. *Symczyk*, 656 F.3d at 192–93 (citing *Wright v. Lehigh Valley Hosp.*, No. 10-431, 2010 U.S. Dist. LEXIS 86915, at *7–10 (E.D. Pa. Aug. 24, 2010) (canvassing cases)); *Zavala*, 691 F.3d at 536.

If a plaintiff meets this burden, the court will "conditionally certify" the collective such that pretrial discovery may proceed, and notice may be sent to putative members of the collective, who may then affirmatively opt in to the litigation. *Symczyk*, 656 F.3d at 192.

**2.    Intermediate Standard of Review at the First Step of the Certification Analysis**

Some district courts within the Third Circuit, including this court, have applied an intermediate standard of review for the first step of this certification process when the parties have already engaged in some measure of discovery. *See Skaggs v. Gabriel Bros.*, No. 1:19-cv-2032, 2021 U.S. Dist. LEXIS 14076, at *21–25 (M.D. Pa. Jan. 26, 2021) (Wilson, J.); *Kane v. Ollie's Bargain Outlet, Inc.*, No. 1:18-cv-2261, 2020 U.S. Dist. LEXIS 219927, at *24–32 (M.D. Pa. Nov. 24, 2020) (Wilson, J.); *Sloane v. Gulf Interstate Field Servs.*, No. 4:16-cv-01571, 2017 U.S. Dist. LEXIS 43088, at *17 (M.D. Pa. Mar. 24, 2017); *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D. Del. 2007).  Courts utilizing this standard recognize that:

> applying the intermediate approach helps "the Court [to] make an educated decision as to whether certifying this matter as a collective action would survive the decertification process."  To proceed otherwise "would be an exercise in futility and wasted resources for all parties involved."  "Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute."  "Consistent with this principle, courts have the responsibility to avoid 'stirring up' litigation through unwarranted solicitation."

*Sloane*, 2017 U.S. Dist. LEXIS 43088, at *17 (citations and footnotes omitted).

Thus, an intermediate standard of review reconciles the parties' advanced discovery positions with the court's typical reliance solely "on the pleadings and

affidavits . . . to determine the suitability of conditional certification." *Waltz v. Aveda Transp. & Energy Servs.*, No. 4:16-cv-00469, 2016 U.S. Dist. LEXIS 178474, at *5 (M.D. Pa. Dec. 27, 2016) (citing *Villanueva-Bazaldua*, 479 F. Supp. 2d at 415). In other words, an intermediate standard mandates that "from the plaintiff to whom much discovery is given, much proof is expected in return." *Sloane*, 2017 U.S. Dist. LEXIS 43088, at *15.

The Southern District of Illinois has aptly summarized the need for an intermediate approach in light of the procedural challenges facing courts where the parties have engaged in discovery, yet only seek conditional certification. *See Bunyan v. Spectrum Brands, Inc.*, No. 07-cv-0089, 2008 U.S. Dist. LEXIS 59278 (S.D. Ill. Jul. 31, 2008).

> It is clear that the parties have conducted a substantial amount of discovery in this case. They have exchanged interrogatories, conducted depositions, and exchanged a large number of documents. The Court cannot close its eyes to the amount of discovery already performed in this action. At the same time, the Court is cognizant that Plaintiffs only seek conditional certification at this point and that discovery is not complete. Taking the intermediate two-step approach permits the Court to determine whether a sound basis exists for proceeding conditionally as a collective action while also considering all evidence available at this time. Additionally, because discovery is not yet complete, conditional certification, if granted, permits Defendants to make a fully informed challenge to certification once discovery concludes. As such, the Court's analysis proceeds under the intermediate approach.

*Id.* at *4.

Indeed, several district courts outside of this Circuit have found the intermediate approach to conditional certification prudent.  *See, e.g.*, *McClean v. Health Sys.*, No. 11-3037, 2011 U.S. Dist. LEXIS 142283, at *10–13 (W.D. Mo. Dec. 12, 2011) (adopting an intermediate standard where some measure of discovery was completed); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592, 2011 U.S. Dist. LEXIS 105302, at *15–18 (W.D.N.C. Sept. 16, 2011) (noting that while significant discovery had not yet occurred, "the Court cannot ignore the fact that the parties requested, and engaged in, some discovery on the certification issue"); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 895 (N.D. Iowa 2008) (applying "the more onerous second stage analysis to account for all the important facts learned through discovery that inform what putative plaintiffs, if any, are similarly situated to existing plaintiffs"); *Thiessen v. GE Capital Corp.*, 996 F. Supp. 1071, 1080–81 (D. Kan. 1998) (noting that where the parties had already conducted three months of discovery, the plaintiff was clearly "beyond the 'notice stage,'" and application of an intermediate standard was appropriate).

### 3.   Second Step of the Certification Analysis

Regardless of which standard is used for the first step of the certification analysis, under the second hurdle, the court "makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact

similarly situated to the named plaintiff." *Symczyk*, 656 F.3d at 193 (citing

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)).  This

second stage typically occurs after the parties have engaged in substantial

discovery and have assembled "a much thicker record" on which a court may

evaluate the relative positions and similarities of the putative collective members.

*Id.* (quoting *Morgan*, 551 F.3d at 1261).  Once the court has the benefit of this

added discovery, it may consider, *inter alia*:

> whether the plaintiffs are employed in the same corporate department,
> division, and location; whether they advance similar claims; whether
> they seek substantially the same form of relief; and whether they have
> similar salaries and circumstances of employment.  Plaintiffs may also
> be found dissimilar based on the existence of individualized defenses.

*Zavala*, 691 F.3d at 536–37 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.17

(3d Cir. 2007); 45C Am. Jur. 2d Job Discrimination § 2184).  The Third Circuit

has emphasized that these enumerated factors are not exhaustive, and that the

plaintiff must satisfy his or her burden at the second stage by establishing that the

plaintiffs who have opted in are similarly situated to the named plaintiff(s) by a

preponderance of the evidence.  *Zavala*, 691 F.3d at 537; *Symczyk*, 656 F.3d at 193

n.6.  Thus, plaintiffs face a more demanding burden at the second stage of the

collective certification analysis.  *Zavala*, 691 F.3d at 534.

### 4.    Modest Factual Showing Versus Intermediate Approach

In this case, the parties do not purport to disagree regarding which standard is applicable at the first step—the modest factual showing or the intermediate approach.  Indeed, Defendants assert that in light of the extensive discovery that has been conducted in this case, a heightened standard of review is warranted and appropriate, and Henkel does not appear to respond to this contention.[9]  (Doc. 148, p. 22.)

The court finds that the intermediate standard is appropriate here to best serve the interests of judicial economy and achieve an efficient resolution of this case.  The parties have engaged in significant discovery in this case spanning over three years, including numerous requests for extensions of time to complete discovery.  (*See* Docs. 55, 65, 72, 86, 88, 90, 92, 94, 99, 102, 107, 114, 117, 121, 123, 125.)  Indeed, it appears that discovery began in late 2015 and was not completed until May 31, 2019.  (Docs. 31, 125.)  To date, over thirty individuals have already opted into this litigation.  (*See* Docs. 56, 57, 60, 64.)  "The [c]ourt cannot close its eyes to the amount of discovery already performed in this action." *Bunyan*, 2008 U.S. Dist. LEXIS 59278, at *4.  Indeed, "it would be an entirely

---

[9] The court notes that in Henkel's brief in support of the motion for conditional certification, she argues that she has "made a modest factual showing that other employees of Defendants are similarly situated to Plaintiffs in that they were affected by the same unlawful practices and policies of Defendants."  (Doc. 127, p. 28.)  However, Henkel does not address Defendants' argument in favor of the heightened standard in her reply brief.

inefficient use of resources for [the court] to conditionally certify a collective action, only to double-back because the bulk of the discovery it already considered has cast an ominous shadow upon the propriety of the ultimate merits." *Sloane*, 2017 U.S. Dist. LEXIS 43088, at *22. Thus, the court finds it appropriate to consider the discovery submitted in this case, despite the preliminary procedural posture typically associated with motions for conditional collective certification.

Despite this conclusion, the court also notes that the Third Circuit has not had the opportunity to consider whether this Circuit should apply the intermediate standard in cases such as this where discovery has already been completed. Thus, out of an abundance of caution, the court will also review the conditional certification question under the modest factual showing standard.

### DISCUSSION

Henkel moves to certify two classes, one comprised of servers and one comprised of housekeepers, under Federal Rule of Civil Procedure 23, and to conditionally certify a collective comprised of servers under the FLSA. Defendants oppose these motions, arguing that Henkel has failed to satisfy every element of the Rule 23 certification standard, and that Henkel is not similarly situated to other collective members for purposes of conditional collective certification under the FLSA. (Doc. 148, pp. 12–25.) Defendants also argue that Henkel's request to equitably toll the statute of limitations for the putative

collective should be denied because she has failed to demonstrate the extraordinary circumstances ordinarily necessary to obtain this relief.  (*Id.* at 25–26.)  Finally, Defendants assert that Henkel's proposed notice to putative class members should be rejected because "as it stands, Plaintiffs' proposed notice suffers from several defects, including, inter alia, its failure to set forth the contact information for Defendants' counsel[,]" and that the parties should have time to meet and confer to create a new proposed notice to putative class members.  (*Id.* at 26–27 n.4.) Henkel rejoins that she has adequately satisfied all requirements for class and collective certification and that the arguments raised by Defendants regarding her proposed notice are trivial and should be disregarded.  (Doc. 155, pp. 12–18.)  In addition, Henkel posits that her earlier motion to certify the collective serves to toll the statute of limitations since her first motion was denied without prejudice and the present renewed motion was timely filed.  (*Id.* at 17.)

## A. Class Certification Will be Granted Under Federal Rule of Civil Procedure 23 as to Henkel's Proposed Classes of Servers, Doc. 126, and Housekeepers, Doc. 135.

For the sake of efficiency and because there is a significant amount of overlap between the proposed classes of servers and housekeepers, the court will discuss the elements required to certify both putative classes at once below.  Each putative class seeks to pursue claims for unjust enrichment against Defendants

based on Defendants' failure to remit the gratuity allegedly charged to Plaintiffs

for their service at the Resorts.

### 1.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Court of Appeals for the

Third Circuit has held that "there is no magic number of class members needed for

a suit to proceed as a class action[,]" but that "numerosity is generally satisfied if

there are more than 40 class members."  *In re NFL Players Concussion Injury*

*Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) (citing *Marcus v. BMW of N. Am., LLC*,

687 F.3d 583, 595 (3d Cir. 2012)).

In this case, Henkel asserts that there are over 40 servers and over 40

housekeepers per putative class, which is corroborated by Defendants' employee

timecards and payroll records submitted in support of the motions.  (*See* Doc. 127,

p. 13; Doc. 156-1; Doc. 161-6.)  Thus, this element is satisfied for both putative

classes.

### 2.    Commonality

"A putative class satisfies Rule 23(a)'s commonality requirement if the

named plaintiffs share at least one question of fact or law with the grievances of

the prospective class."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir.

2013) (internal quotation marks omitted).  "Their claims must depend upon a

common contention . . . that it is capable of classwide resolution—which means

that determination of its truth or falsity will resolve an issue that is central to the

validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350 (2011).  This requirement does not present a high burden; the Third

Circuit has "acknowledged commonality to be present even when not all members

of the plaintiff class suffered an actual injury, when class members did not have

identical claims, and, most dramatically, when some members' claims were

arguably not even viable." *In re Cmty. Bank*, 795 F.3d at 397 (internal citations

omitted).

In this case, all Plaintiffs are pursuing unjust enrichment claims based on

Defendants' alleged failure to remit gratuities to which Plaintiffs allege they were

otherwise entitled.  Both servers and housekeepers assert that they were entitled to

receive this gratuity, but that neither class received it.  From the court's disposition

of the summary judgment motions in this case, the linchpin of the unjust

enrichment claim, which the court has found presents a question for a jury's

resolution, is whether Defendants accepted and retained the gratuities despite the

fact that their guests, in paying the gratuity, believed the gratuity would be passed

on to traditionally-tipped employees like Plaintiffs.  This is a question that is

common to the putative members of each class, and "determination of its truth or

falsity will resolve an issue that is central to the validity of . . . the claim[] in one

stroke." *Dukes*, 564 U.S. at 350. Thus, the court finds that commonality has been satisfied in this case.

### 3. Typicality

Rule 23(a)(3) mandates that the class representative's claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The Third Circuit has set a "low threshold" for typicality. *Id.* at 183. "'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)) (alteration omitted).

Here, despite the apparent factual differences between the putative Plaintiffs and Henkel, as discussed further below, the court does not find that these factual differences affect the resolution of the putative class actions under Rule 23. Indeed, while Henkel only worked as a server and housekeeper on an "as-needed" basis, it is apparent that she did work in both of these capacities. (*See* Doc. 128-8,

pp. 9–10; Doc. 149-1.)  As such, Henkel argues that she was entitled to receive her proportional share of the gratuities collected by Defendants based on an unjust enrichment theory of recovery.  This goal and legal theory squarely aligns with that of the remaining putative class members.  Moreover, Henkel's claim arises from the same course of conduct as the putative class members': Defendants' alleged unjust retention of the gratuities collected from guests.  Therefore, the court finds that "the interests of the class and the class representative[] are aligned 'so that the latter will work to benefit the entire class through the pursuit of [her] own goals.'" *Newton*, 259 F.3d at 182–83 (quoting *Barnes*, 161 F.3d at 141).

### 4.    Adequacy

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This test is designed to examine the qualifications of class counsel, the class representatives, and whether there are any "conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428.

### a.    Class Counsel

As part of the certification process, the court must appoint class counsel. Rule 23(g) sets forth a non-exhaustive list of factors for courts to consider when appointing class counsel, including counsel's work on the pending class action,

experience in handling class actions or other complex litigation, knowledge of the applicable law, and the resources available and committed to representing the class.  Fed. R. Civ. P. 23(g).

Defendants do not question the qualifications or capability of Plaintiff's counsel to represent the putative classes in this case.  In addition, the court independently finds, based on the declarations of counsel, that Plaintiff's counsel is adequate to represent the putative classes.  Plaintiff's counsel has declared that the law firm of Levine & Blit, PLLC "focuses its practice on labor and employment litigation, . . . and . . . is knowledgeable of the law applicable to this matter."  (Doc. 128, ¶ 11; Doc. 137, ¶ 9.)  In addition, the declarations state that "Levine & Blit, PLLC is experienced in the prosecution of class and collective actions[,]" and that this firm "has worked diligently in investigating and prosecuting the claims brought by Plaintiffs and will continue to do so on behalf of the class and collective."  (Doc. 128, ¶¶ 13, 14; Doc. 137, ¶¶ 11, 12.)  The court finds that this is a sufficient showing to appoint class counsel.

###          b.          Conflicts of Interest

Finally, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. 591, 625 (1997).  The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and

the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012).  Thus, it is clear that there are "similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009).

Defendants do not allege that there are conflicts between Henkel and the putative classes.  Rather, they assert that Henkel is an inadequate representative because she was classified as a café department worker, rather than as a server or a housekeeper; therefore, she fails to qualify for either of her own defined classes. (Doc. 148, pp. 18–21.)  In addition, Defendants cite to Henkel's allegedly inconsistent statements on the record for the proposition that Henkel has interests antagonistic to the proposed classes.  (*Id.*)

The court does not discern any apparent conflicts between putative class members and Henkel.  Rather, as explained supra, Henkel's argument that she was entitled to receive her proportional share of the gratuities collected by Defendants based on an unjust enrichment theory of recovery for the days that she worked as a server and housekeeper is the same as that of the putative class members. Therefore, Defendants would raise the same defenses to both Henkel and the putative classes' claims.  It is irrelevant that Henkel's potential recovery for the

gratuity may be lower than other class members' who worked full-time as servers or housekeepers over a number of years.  If the unjust enrichment claims succeed, and damages are awarded, Henkel will be entitled to a percentage of the proceeds proportionate to the amount of time she spent working as a server and housekeeper—just like the other putative class members.  The court's inquiry is whether Henkel's interests and incentives are aligned with those of the putative classes.  There is no evidence that Henkel would be less incentivized to pursue this case on behalf of the putative classes because her time spent working as a server and housekeeper was less than other putative class members'.  The court accordingly finds this element to be satisfied.

### 5.   Predominance

Having concluded that the core elements of Rule 23(a) have been satisfied, the court now turns to the additional requirements for certifying a class under Rule 23(b)(3).  Under Rule 23(b)(3), the class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  The Third Circuit has "previously noted that the Rule 23(b)(3) predominance requirement . . . incorporates the Rule 23(a) commonality requirement[,]" although it is "far more

demanding[.]" *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 434

(quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)).

"Resolving the question of whether the predominance requirement has been

met necessarily depends on the nature of the claims and the strength of the

evidence proffered in support of the claims." *In re Chocolate Confectionary*

*Antitrust Litig.*, No. 1:08-MDL-1935, 289 F.R.D. 200, 219 (M.D. Pa. Dec. 7,

2012). Therefore, "a district court must formulate some prediction as to how

specific issues will play out in order to determine whether" issues are common to

the class, or must be resolved on an individual basis. *In re Hydrogen Peroxide*

*Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008) (quoting *In re New Motor*

*Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)). Class

certification is inappropriate when consideration of the elements of the underlying

cause of action will require the court to delve into individual plaintiffs'

circumstances. *Id.* at 311 (citing *Newton*, 259 F.3d at 166).

Unjust enrichment is an equitable action that sounds in quasi-contract, i.e. a

contract implied in law. *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007).

In Pennsylvania, a plaintiff must prove that: "(1) benefits have been conferred on

one party by another; (2) the recipient has appreciated the benefits; and (3) the

recipient has accepted and retained the benefits under such circumstances that it

would be inequitable or unjust for the recipient to retain the benefits without

payment of value." *Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468, 480

(E.D. Pa. 2010) (citing *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429,

447 (3d Cir. 2000) (applying Pennsylvania law)).  Stated another way, a plaintiff

must show that "the party against whom recovery is sought either 'wrongfully

secured or passively received a benefit that it would be unconscionable for her to

retain.'" *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985).

At the summary judgment stage in this case, the court concluded that

Defendants received a benefit through the payment of the gratuity by their guests,

and that Defendants "appreciated" that benefit in the form of an additional revenue

stream for the Resorts.  The court found that the third element of the unjust

enrichment test, however, involved disputed material facts — whether Defendants

accepted and retained the gratuities only because their guests, in paying the

gratuity, believed the gratuity would be passed on to traditionally-tipped

employees like Henkel and the putative class members.

The court finds that in this case, the individual circumstances of Plaintiffs

are nearly irrelevant when considering the proof required to maintain a cause of

action for unjust enrichment.  Indeed, the elements of this claim involve actions of

individuals outside of the putative classes—Defendants and the guests who stayed

at the Resorts and paid gratuity.  The court will be concerned with the guests'

understanding of the gratuity and Defendants' use of this benefit when resolving

this case; individual concerns surrounding Henkel and the putative class members are not at issue.

Moreover, class management would not be difficult.  The court finds that the most difficult part of class administration, which will not impose so great a burden that certification is unwarranted, will be determining the damages award owed to each Plaintiff once this case is resolved—a simple mathematical exercise.

In addition, as stated above, all putative Plaintiffs have an interest in the central question for resolution in this case: whether Defendants accepted and retained the gratuities only because their guests, in paying the gratuity, believed the gratuity would be passed on to traditionally-tipped employees like Henkel and the putative class members.  Thus, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members[,]" and that these proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623; Fed. R. Civ. P. 23(b)(3).

### 6.   **Superiority**

Rule 23(b)(3)'s superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Warfarin*, 391 F.3d at 533–34 (internal quotation marks omitted).  Courts consider "the class members' interests in

individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D); *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 434–35.

The court finds that class resolution is the most efficient and fairest means of resolving this case for Henkel and all putative Plaintiffs.  The court does not discern any reason that a particular plaintiff would wish to individually control the litigation or forego class resolution in favor of individual litigation.  The cost-saving measures for both the court and Plaintiffs justify class resolution. Therefore, this element is likewise satisfied.

### 7.    Class Notice

Having determined that these classes should be approved under Rule 23(a) and (b)(3), the court next considers the proposed notice for these classes.  The Third Circuit has held that notice "is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Prudential*, 148 F.3d at 327 (internal quotation marks omitted).  "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their

rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Above and beyond the requirements of Rule 23, due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The court recognizes that the motions for class certification were filed and briefed before the court addressed the partial motion for summary judgment. However, as a result of the court's disposition, the issues and claims in this case have narrowed. As such, Henkel's proposed notices for the classes no longer reflect the live claims at issue in the case. The court will direct the parties to consult and confer regarding an amended proposed class notice for both classes (one for servers and one for housekeepers) and provide new proposed notices in accordance with the guidance set forth in this memorandum.

32

**B. Conditional Certification Under the FLSA Will be Denied.**

Defendants argue that Henkel is not entitled to conditional certification because Henkel is not similarly situated to the proposed class members, and because individualized inquiries "would permeate this action" since the court would need to assess whether servers were required to work off the clock, and, by extension, whether they were paid for this time. (Doc. 148, pp. 24–25.) Henkel counters that she, and all putative collective members, "held the same positions, were compensated by the same method, and sustained the same type of economic loss." (Doc. 155, p. 16.) Henkel also asserts that Defendants maintained a "general practice or policy" of requiring servers to work off the clock without pay. (*Id.* at 16–17.)

### 1.   Henkel is Not Entitled to Conditional Certification Under the Intermediate Standard.

In considering discovery under the intermediate standard, with an eye toward determining whether the plaintiffs are similarly situated, courts have found it appropriate to divide their analysis into three parts: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Sloane*, 2017 U.S. Dist. LEXIS 43088, at *27–28 (quoting *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011)).

First, the court considers the "plaintiffs' job duties, geographical location, supervision, and salary." *Id.* at *28 (quoting *Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 378 (W.D. Pa. 2011)). Second, the court considers whether defenses raised by the defendant would apply to the collective as a whole or with respect to individual opt in plaintiffs. *Id.* (quoting *Andrako*, 788 F. Supp. 2d at 378). Finally, the court considers questions of fairness, efficiency, and procedural considerations—whether the collective would require an individual inquiry into each plaintiff, rather than an examination of the collective's employment situation. *Id.* (quoting *Lusardi v. Xerox Corp.*, No. 83-809, 118 F.R.D. 351, 360 (D.N.J. Nov. 5, 1987)).

As part of the court's responsibility in conducting this analysis, the court must consider section 216(b)'s primary objectives: (1) lowering costs for plaintiffs by pooling resources; and (2) limiting controversies to one proceeding which can efficiently resolve "common issues of law and fact that arose from the same alleged activity." *Id.* at *28–29 (quoting *Moss v. Crawford & Co.*, No. 98-1350, 201 F.R.D. 398, 410 (W.D. Pa. Sept. 21, 2000)). Part of this consideration is whether the court can "coherently manage the class in a manner that will not prejudice any party." *Id.* at *29 (quoting *Moss*, 201 F.R.D. at 410).

Turning to the first factor, the disparate factual and employment settings of the individual Plaintiffs, the court finds that there are disparities in the job duties

and payment schemes between Henkel and the putative collective.  The record

demonstrates that Henkel was employed "primarily, if not exclusively," as a café

attendant, and that her work in other departments was "aberrational" to fill gaps as

needed.  (Doc. 156-10, p. 32.)  Testimony establishes that the café attendant

position is separate and distinct from the server position, which is classified under

a different department.  (Doc. 149, p. 2.)  This testimony is confirmed by the time

reporting code records for Henkel and servers employed by Defendants at Cove

Haven Resort.  (Docs. 149-1; 156-1.)  Henkel's time reporting code confirmed that

she did not work primarily as a server for Defendants; her code is different than

that of the servers working in the banquet department.  (*Id.*)  Moreover, notes on

her time card sheets reflect that Henkel was only sent to help in the kitchen on one

occasion, and the remainder of her time appeared to be spent in the café with only

a few other exceptions.  (Doc. 149-1, p. 4.)  However, the court is unaware of

whether Henkel was an hourly employee or of her classification status vis-à-vis the

FLSA.

  Moreover, and more fundamentally, the court questions whether, regardless

of Henkel's classification, she was eligible to receive overtime wages.  Indeed,

Henkel testified that at all times working for Defendants, she was a part-time

employee so that she could attend school.  (Doc. 128-8, p. 13.)  Thus, even if

Henkel worked as a server, it is unclear that she ever worked over 40 hours per week for Defendants—a basic prerequisite for overtime eligibility under the FLSA.

In contrast to Henkel, the opt-in Plaintiffs characterize themselves primarily as servers who may have worked in other departments on occasion. (*See, e.g.*, Docs. 130, 131, 132, 133, 157, 158, 159.)  These putative collective members declared that they were paid on a per head basis, rather than an hourly wage.  (*Id.*) In addition, some of these individuals declared that, as servers, they were required to clock out and continue working between the meal shifts throughout the day. (Docs. 130, 131, 132.)  Importantly, only three of these opt-in Plaintiffs declared that they were required to work off the clock in between their shifts.  (*See id.*) Finally, only four of the opt-in Plaintiffs alleged that they worked over 40 hours per week on a seasonal basis and should have accordingly received overtime wages.  (Doc. 130, p. 1; Doc. 131, p. 1; Doc. 132, p. 1; Doc. 133, p. 1.)

Thus, the only named Plaintiff in this case, Henkel, is in a substantially different employment position for FLSA classification purposes than the other opt-in Plaintiffs.  Moreover, the court finds that there are important differences between the opt-in Plaintiffs themselves which frustrate resolution of this case on a collective basis.  Only some of the opt-in Plaintiffs declared that they were required to continue working after they had clocked out while others are silent on this point.  The court finds this to be an important distinction since those opt-in

Plaintiffs who did not allege that they were not paid overtime wages to which they were otherwise entitled lack any evidence that they were treated improperly for FLSA purposes.  Indeed, some opt-in Plaintiffs do not even allege that they worked over 40 hours per week—another fundamental prerequisite for recovery under the FLSA.  Therefore, the first factor weighs against conditional certification due to the disparities between Henkel and the opt-in Plaintiffs and between and among the opt-in Plaintiffs themselves.

The second factor, the various defenses available to the defendant, likewise cuts against conditional certification in this case.  Defendants have primarily asserted that its servers are exempt for purposes of the overtime provisions of the FLSA because these individuals fall within the FLSA's section 7(i) exemption.[10] (Doc. 128-3, p. 15.)  The complaint and the record in this case appear to indicate that Henkel and the opt-in Plaintiffs are pursuing at least three different arguments

---

[10] Section 7(i) provides that:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

for unpaid overtime wages under the FLSA.  Specifically, Henkel and the opt-in

Plaintiffs appear to pursue recovery based on theories that: (1) servers were

assigned "too few guests during their shift" so they would not qualify for overtime

wages; (2) Plaintiffs "were required to clock out at the end of their shift and

continue working[;]" and (3) Plaintiffs were misclassified as exempt from overtime

under the FLSA.  (Doc. 110, pp. 5–6.)  The lack of clarity regarding the legal

theory being pursued through collective resolution means that Defendants would

potentially have different defenses for different employees based on which

employees are eligible for recovery under one or more legal theory.  Likewise, the

court would have logistical problems attempting to classify employees based on

whether one or more legal theories qualifies them for recovery.  This ambiguity

strongly cuts against collective certification in this case.

Finally, the court turns to questions of fairness, efficiency, and procedural

issues.  The court finds that, in light of the significant differences between Henkel

and the opt-in Plaintiffs on the record before the court, which is made up of

declarations and testimony from only a fraction of Henkel's proposed collective,

Henkel's proposed collective is simply too broad and legally ambiguous to be

similarly situated for purposes of collective management.  There is nothing

efficient about conditionally certifying a class in which there are three or more

classes, each pursuing a separate theory of recovery under the FLSA only to

double back at the final certification stage to reach the same conclusion that

collective resolution is inappropriate for this case.

Considering all of the foregoing factors, the court finds that none weigh in

favor of granting conditional certification and that Henkel's proposed collective is

too broad to make collective management possible.  Therefore, applying the

intermediate standard of review, the court will deny Henkel's motion for

conditional certification.  (Doc. 126.)

### 2.    Henkel is Not Entitled to Conditional Certification Under the Modest Factual Showing Standard.

Even if the intermediate standard were not applied, however, Henkel has

failed to satisfy her burden under the modest factual showing standard.  Henkel

must "produce some evidence, 'beyond pure speculation,' of a factual nexus

between the manner in which the employer's alleged policy affected her and the

manner in which it affected other employees."  *Symczyk*, 656 F.3d at 193 (citing

*Smith*, 2003 U.S. Dist. LEXIS 21010, at *10).  There is evidence in the record that

Defendants maintained a policy of classifying banquet servers as exempt from

overtime under FLSA exemption 7(i).  (Doc. 128-3, pp. 9–10, 15.)  In addition,

certain servers declared that they were required to work extra hours in between

shifts while clocked out.  (Docs. 128-8, 130, 131, 132.)  However, Henkel has

failed to show that she was subject to these policies.  Indeed, it is unclear to the

court how Henkel was classified for FLSA purposes (i.e., whether she was

classified as exempt under section 7(i)) or whether her sporadic days working as a
server caused her to be eligible for overtime).  Based on Henkel's own deposition
testimony, in which she stated that she was a part-time employee during the
duration of her employment with Defendants, it does not appear that she was.
Moreover, it is unclear whether she was required to work while clocked out as a
server.  In short, the court would be speculating as to whether either policy actually
applied to Henkel.  Thus, the court finds that Henkel would be a poor
representative for either of these collectives and is not similarly situated to the opt-
in Plaintiffs.

It is also problematic, as described above, that Henkel seeks to certify one
collective of all servers employed at any of Defendants' resorts between October 1,
2012 and January 31, 2016 based on three potential policies that allegedly violate
the FLSA—misclassification under section 7(i) of the FLSA; earned overtime
wages that simply were not paid; and deprivation of the opportunity to earn
overtime wages.  The importance of this ambiguity for purposes of collective
resolution is underscored by the fact that Plaintiffs generally seek to form a single
putative collective to pursue and resolve claims that these individuals were
generally not paid overtime wages to which they were otherwise allegedly entitled.
The court would employ a different analysis, and Defendants would have different
defenses, for employees eligible for overtime who were simply not paid these

wages than for employees challenging their classification as exempt from overtime wages.  This ambiguity also cuts against collective certification in this case.

Thus, the court finds that denial of conditional certification is warranted in this case in light of the significant differences presented by the relatively small sample of the potential collective members under current consideration.  The court would need to conduct individualized inquiries with respect to each putative collective and within subparts of each collective—a task ill-suited for singular collective resolution as proposed in this case.  Therefore, on these additional grounds, the court will deny Henkel's motion for conditional certification.[11]  (Doc. 126.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for class certification under Rule 23 for both servers and housekeepers will be GRANTED, Docs. 126, 135, but Plaintiff's motion for conditional certification under the FLSA will be DENIED. (Doc. 126.)  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 22, 2021

---

[11] In light of the court's denial of conditional certification under the FLSA, the court need not address Defendants' contention that the collective is not entitled to equitable tolling.