# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHELSEA HENKEL, on behalf of herself and other similarly situated, | : | Civil No. 3:15-CV-01435 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HIGHGATE HOTELS, L.P. and COVE HAVEN, INC., | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are two motions–a renewed motion for judgment as a matter of law, Doc. 328, and a motion to decertify class actions, Doc. 330–filed by Defendants Highgate Hotels, L.P. and Cove Haven, Inc. (collectively, "Defendants"). These motions follow nearly a decade of litigation and a five-day jury trial resulting in a verdict in favor of Plaintiff Chelsea Henkel ("Henkel") on behalf of herself and the classes of servers and housekeepers. The court finds that Plaintiffs failed to prove their unjust enrichment claim as a matter of law, and will enter judgment in favor of Defendants. For the reasons that follow, the court will grant the motion for judgment as a matter of law and deny as moot the motion to decertify the class actions.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Henkel initiated this action via a collective and class action complaint on July 23, 2015, against Defendants Highgate Hotels, LP ("Highgate") and Cove

Haven, Inc. ("Cove Haven").  (Doc. 1.)  Between the initiation of this action and the filing of summary judgment motions, Henkel amended her complaint four times.  (Docs. 12, 47, 49, 110.)  The fourth amended complaint, which was filed on November 14, 2018, set forth eight claims against Defendants: unpaid minimum wages in violation of the Fair Labor Standards Act ("FLSA") (Count 1);  unpaid overtime wages in violation of the FLSA (Count 2); unpaid minimum wages in violation of the Pennsylvania Minimum Wage Act ("MWA") (Count 3); unpaid overtime wages in violation of the MWA (Count 4); breach of contract to an express third-party beneficiary (Count 5); breach of contract to an intended third-party beneficiary (Count 6); unjust enrichment (Count 7); and conversion (Count 8).  (Doc. 110.)

Following additional extension requests by the parties, Henkel moved to certify class and collection actions of servers, as well as a class of housekeeper attendants on June 11 and 14, 2019, respectively.  (Docs. 126, 135.)  Defendants moved for partial summary judgment on June 14, 2019.  (Doc. 139.)

This case was reassigned to the undersigned on November 15, 2019. Thereafter, the parties informally requested that the court stay any decision on the motions to certify and for partial summary judgment as the parties were engaged in settlement negotiations.  In late September 2020, the parties reported to the court that a settlement could not be reached.  Having been so notified, the court ruled on

the pending motions.  The court granted Defendants' motion for partial summary judgment in part.  (Docs. 178–179.)  The court granted judgment in Defendants' favor on Henkel's claims for violations of the FLSA and MWA claims for unpaid minimum wages (Counts 1 and 3), breach of contract to an express third-party beneficiary (Count 5), breach of contract to an intended third-party beneficiary (Count 6), and conversion (Count 8).  (Docs. 178–179.)  The court denied the motion as to Henkel's unjust enrichment claim (Count 7).[1]  (Docs. 178–179.)

After requesting supplemental briefing, the court granted Henkel's motions for class certification under Rule 23, but denied the motion for conditional collective certification under the FLSA and MWA.[2]  (Docs. 192, 193, 232.)  For the unjust enrichment claim, the court certified two classes, one for servers employed at any of Defendants' resorts between October 1, 2012, and January 31, 2016, and one for housekeepers employed at any of Defendants' resorts between October 1, 2012, and January 31, 2016.  (*See* Doc. 192.)

---

[1] Defendants did not move for summary judgment on Counts 2 and 4 of the fourth amended complaint for unpaid overtime wages in violation of the FLSA and MWA.

[2] On August 2, 2022, the court recognized that it overlooked ruling on the motion to certify a collective action as to the MWA claim and scheduled a telephone conference.  (Doc. 228.) Following the telephone conference, the parties stipulated that the court's ruling regarding the collective for the FLSA claim applied equally to the MWA claim.  (Doc. 231.)  The court adopted this stipulation, thus, denying the motion for conditional collective certification under the MWA.  (Doc. 232.)

This case was scheduled for trial on several dates, but required continuances due to court scheduling conflicts and the parties filing additional motions that required additional briefing and rulings prior to trial.  Those additional rulings are summarized as follows.  On August 16, 2022, the court granted Plaintiffs' motion to file a fifth amended complaint to clarify that Plaintiffs were seeking prejudgment interest.  (Doc. 233.)  On September 30, 2022, the court granted Defendants' motion to dismiss the opt-in Plaintiffs' claims under the FLSA and MWA, and denied Plaintiffs' motion to sever the class claims from Henkel's individual claims for trial.  (Doc. 245.)  Following these rulings, the court again scheduled the trial for June 2023.  (Doc. 247.)

Leading up to trial, the parties filed multiple motions in limine, which the court ruled on prior to trial.  (Doc. 296.)  Defendants also moved to partially strike Plaintiffs' jury demand and to preclude the testimony of one of Plaintiffs' witnesses, both of which the court denied.  (Docs. 297, 301.)

Trial in this case commenced on June 21, 2023.  The claims that remained at the start of the trial included Henkel's individual claims for unpaid overtime under the FLSA and MWA and Plaintiffs' class claim of unjust enrichment.  At the conclusion of Plaintiffs' case-in-chief, the parties made several motions.  Both parties moved for judgment as a matter of law as to all claims under Federal Rule

of Civil Procedure 50(a).[3]  The court denied Plaintiffs' motion in full and denied

Defendants' motion as to the unjust enrichment claim.  (*See* Doc. 311.)  However,

the court granted Defendants' motion with respect to Henkel's FLSA and MWA

unpaid overtime claims and ordered that judgment would be entered in

Defendants' favor on those claims when the court entered a final judgment in this

case.  (*Id.*)  Lastly, the court deferred ruling on Defendants' motion to decertify the

classes, which was also docketed, *see* Doc. 309, until after the verdict but prior to

entering final judgment.  (*Id.*)

The jury returned a verdict on June 27, 2023, in Plaintiffs' favor on the

unjust enrichment claim and awarded damages in the amount of $1,295,547.00.

(Doc. 313.)  Thereafter, the court set a briefing schedule for post-trial motions.

Defendants timely filed their renewed motion for judgment as a matter of law and

renewed motion to decertify the class actions on October 19, 2023, along with

briefs in support of each motion.  (Docs. 328–331.)  Plaintiffs filed briefs in

opposition to both motions on December 4, 2023, and reply briefs were filed on

December 18, 2023.  (Docs. 338–343.)  Thus, Defendants' motions are ripe for

review.

---

[3] Defendants moved for judgment as a matter of law under Rule 50(a) orally on the record and by filing a motion.  (*See* Doc. 310.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 50(b) provides: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  In ruling on a motion under Rule 50(b), the court may "allow judgment on the verdict," "order a new trial," or "direct the entry of judgment as a matter of law."  FED. R. CIV. P. 50(b)(1)–(3).

A court should "sparingly" enter judgment as a matter of law and, "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (quoting *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004); *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 545 n.8 (3d Cir. 2007)).  The court must "refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury."  *Id.* (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

**DISCUSSION**

In their motion, Defendants argue that the court applied an incorrect standard for the first element of the unjust enrichment claim throughout the

pendency of this case.  (Doc. 329, pp. 11–16; Doc. 343, pp. 5–7.)[4]  Then,

Defendants assert that insufficient evidence was presented as to each element of

the unjust enrichment claim.  (Doc. 329, pp. 11–25; Doc. 343, pp. 5–14.)  They

further submit that the unjust enrichment claim is time-barred based on cross-

jurisdictional tolling.  (Doc. 329, pp. 25–27; Doc. 343, p. 14.)  The court will

address each argument in turn.

### A. There was insufficient evidence for the jury to reasonably determine that a benefit was conferred on Defendants by Plaintiffs.

In the court's November 25, 2020 summary judgment opinion, the court

applied the test laid out in *Thompson v. U.S. Airways, Inc.*, 717 F. Supp. 2d 468,

480 (E.D. Pa. 2010) for Plaintiffs' unjust enrichment claim.  The court stated:

> In Pennsylvania, a plaintiff must prove that: "(1) benefits have been conferred *on one party by another*; (2) the recipient has appreciated the benefits; and (3) the recipient has accepted and retained the benefits under such circumstances that it would be inequitable or unjust for the recipient to retain the benefits without payment of value."

(Doc. 178, pp. 22–23 (quoting *Thompson*, 717 F. Supp. at 480) (emphasis added)).

In applying this test, particularly with regard to the aspect of the first element

emphasized above, the court acknowledged that there were important differences

between *Thompson* and this matter, but stated that Defendants failed to provide

"any pertinent caselaw in support of their argument that Plaintiffs' unjust

---

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

enrichment claim [could not] proceed because it was the third-party guests who provided the benefit (gratuity payment) to Defendants." (*Id.* at 24.)  The court ultimately concluded that summary judgment was inappropriate for this claim as there were factual disputes regarding the third element. (*Id.* at 26.)  The court did not find in favor of either party on any element of the claim; rather, it decided that this claim was better left for a jury to decide. (*Id.*)

Following trial, Defendants argue that Plaintiffs failed to provide any evidence that Plaintiffs conferred a benefit on the Defendants. (Doc. 329, pp. 12–16.)  In making this argument, Defendants submit that the court applied the wrong standard for the first element of unjust enrichment in the court's summary judgment opinion and in its jury instructions. (*Id.*)  The court used the standard from *Thompson* for the first element–benefits have been conferred *on one party by another*.  Defendants submit the court should have applied the first element from other case law–a benefit conferred *on the defendant by the plaintiff*.

Defendants argue that *Thompson* traces the authority for the first element of unjust enrichment to the 1994 edition of 16 Summary of Pennsylvania Jurisprudence 2d Commercial Law § 2.2. (*Id.* at 13.)  They submit that this reading of the first element "would have directly contradicted Pennsylvania state court decisions issued before its publication," and "contradicts decisions of Pennsylvania state courts issued between 1994 and the 2010 decision in

*Thompson*." (*Id.* at 13–14.)  Further, decisions after *Thompson* "expressly require

conferral of the benefit at issue on a defendant by the *plaintiff*." (*Id.* at 14.)

Defendants contend that the first element as stated by the Third Circuit in *Morlock*

*v. City of Philadelphia*, No. 20-2973, 2022 WL 252185 (3d Cir. Jan. 26, 2022), i.e.,

a "benefit conferred on [Defendants] by Plaintiffs," is the correct understanding of

the first element.  (Doc. 329, p. 14.)  In sum, Defendants argue that "given the

complete absence of evidence (because no evidence exists) at trial proving Plaintiff

Henkel and the class members provided the Gratuity Fee to Defendants, no

reasonable jury should have found in Plaintiffs' favor." (*Id.* at 16.)

    In opposition, Plaintiffs argue that the court's summary judgment opinion is

the law of the case, and thus, this issue should not be relitigated.  (Doc. 338, pp. 7–

9.)  Nonetheless, if the court were to "entertain these legal arguments," Plaintiffs

submit that Defendants misstate the law.  (*Id.* at 9–12.)  They attempt to distinguish

*Stoeckinger v. Presidential Financial Corp.*, 948 A.2d 828 (Pa. Super. Ct. 2008),

as well as other Pennsylvania cases cited by Defendants, arguing that none of these

cases "require conferral of the benefit at issue on a defendant by the plaintiff, nor

in any way address whether or not a plaintiffs' [sic] unjust enrichment claim must

be dismissed because a third party provided a benefit to the defendant which was

intended for the plaintiff." (Doc. 338, pp. 9–11.)  As to *Morlok*, Plaintiffs similarly

argue that Defendants are simply trying to relitigate summary judgment, that

*Morlok* did not meaningfully address the first element, and that *Morlok* is

unpublished and not precedential.  (*Id.* at 11–12.)  Plaintiffs further note that none

of these cases involved a post-trial motion seeking to overturn a jury verdict.  (*Id.*

at 11.)

In reply, Defendants note that Plaintiffs fail to provide a single citation to the

trial record in support of their argument that they conferred the gratuity fee on

Defendants.  (Doc. 343, p. 2.)  Defendants explain why a denial of summary

judgment is not the law of the case and submit that the court's decision merely

postponed the final decision.  (*Id.* at 3–4.)  They further note that Plaintiffs' law of

the case assertion "invites error" as it "would belie the purpose of a post-trial

motion for judgment as a matter of law, which is to determine an issue of law in

light of the evidence presented at *trial*."  (*Id.* at 4.)

As to the appropriate legal standard, Defendants argue that Plaintiffs cannot

"avoid a body of case law by simply pretending it does not exist."  (*Id.* at 5.)  In

arguing that *Morlok* and other recent Pennsylvania cases should be followed,

Defendants note that a Westlaw search for "plaintiff conferred a benefit on the

defendant" as the first element of unjust enrichment results in more than seventy

decisions.  (*Id.* at 5 n.2.)  Conversely, a Westlaw search for "benefits have been

conferred on one party by another" reveals only three cases.  (*Id.*)  Lastly,

Defendants submit that "Pennsylvania law rejects a third-party beneficiary theory hiding under the guise of unjust enrichment." (*Id.* at 6.)

The court now has the benefit of reviewing the decisions in *Morlok* and *Commonwealth v. Monsanto Co.*, 269 A. 3d 623 (Pa. Commw. Ct. 2021), which were published in 2022 and 2021, respectively, after the court issued its summary judgment decision. In reviewing these decisions and the parties' arguments, the court concludes that the correct understanding of the standard for the first element of unjust enrichment is a benefit conferred *on the defendant by the plaintiff*. In reaching this conclusion, the court agrees with Defendants that the law of the case does *not* bind this court. A denial of summary judgment is not law of the case because "such a denial merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure." *Speeney v. Rutgers*, 673 F. App'x 149, 152 n.2 (3d Cir. 2016) (quoting *Dessar v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965)) (collecting cases); *see also Sikkelee v. Precision Airmotive Corp.*, 45 F. Supp. 3d 431, 444 (M.D. Pa. 2014) (quoting 11 MOORE'S FEDERAL PRACTICE § 56.121(1)(c) (3d ed.)), *vacated on other grounds*, 82 F.3d 680 (3d Cir. 2016) (summary judgment denial "cannot determine the law of a case because it is an interlocutory order subject to reconsideration at any time before final judgment in the case. It does not conclusively resolve any legal issue or find

11

any fact . . . and has no claim- or issue-preclusive effect.") Thus, it is appropriate for the court to consider the correct legal standard for an unjust enrichment claim at this procedural juncture.

The court finds the Third Circuit's 2022 decision in *Morlok* and the Pennsylvania Commonwealth Court's 2021 decision in *Monsanto* particularly instructive. In *Morlok*, citing Pennsylvania law, the Third Circuit identified the proper test for an unjust enrichment claim.[5] 2022 WL 252185, at \*4. A plaintiff must prove: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) "acceptance and retention of such benefit under such circumstances that it would be inequitable for [the defendant] to retain the benefit without payment of value." *Id.* at \*4 (quoting *Mark Hershey Farms Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017)). Similarly, in *Monsanto*, the Commonwealth court applied the same standard requiring that the plaintiff confer the benefit on the defendant.[6] 269 A.3d at 670–71 (quoting *Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137

---

[5] Plaintiffs note that *Morlok* is unpublished and not precedential and thus not binding precedent. (Doc. 338, pp. 11–12.) That is correct, but the court notes that *Thompson*, the case relied on by Plaintiffs, is merely persuasive authority since it is from the Eastern District of Pennsylvania. In addition, the court merely finds *Morlok* to be instructive and not binding.

[6] The court ran a similar Westlaw search as described by Defendants with different results. Nonetheless, from the court's independent research, the court finds it clear that for an unjust enrichment claim, Pennsylvania courts require the plaintiff, not a third-party, to confer the benefit on the defendant.

(Pa Commw. Ct. 2005)); *see also Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) ("The elements of unjust enrichment are benefits conferred on defendant by plaintiff . . . .); *Durst v. Milroy Gen. Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. Ct. 2012) ("benefits conferred on defendant by plaintiff"); *Discover Bank v. Stucka*, 33 A.3d 82, 88 (Pa. Super. Ct. 2011) (same).

Plaintiffs' argument that the cases cited by Defendants are inapposite is not persuasive.  While Plaintiffs are correct that none of the cases cited by Defendants specifically state that a third-party may *not* confer the benefit on the defendant, the cases uniformly state that it is the plaintiff that must confer the benefit on the defendant.  A review of the unjust enrichment doctrine supports this standard. Unjust enrichment is an equitable doctrine which "implies that a contract exists when a party is found to have been unjustly enriched; the doctrine requires the offending party to pay the plaintiff the value of the benefit he has conferred on the defendant." *Monsanto*, 269 A.3d at 670 (citations omitted).  Thus, allowing a third-party to confer the benefit on the defendant is contradictory to the intent of the unjust enrichment doctrine.

Applying the correct first element, the court finds that there was *no* evidence that would allow the jury to reasonably determine that Plaintiffs conferred a benefit, i.e., the gratuity fee, on Defendants.  Indeed, Plaintiffs provided no

citations to the trial record proving this element. Even without the benefit of a citation to the record provided by Plaintiffs, the court notes that there was no evidence presented at trial that shows Plaintiffs conferred the gratuity fee on Defendants. Rather, the evidence exclusively showed that it was the hotel guests who paid the gratuity fee that Plaintiffs seek to recover.

**B. There was sufficient evidence for the jury to reasonably determine that Defendants retained the gratuity fee.**

Next, Defendants argue that Plaintiffs failed to provide evidence at trial for a reasonable jury to find that Defendants retained the gratuity fee, i.e., appreciated the benefits, as required by the second element of unjust enrichment. (Doc. 329, pp. 16–19.) Defendants assert that Plaintiffs did not introduce any evidence articulating which Defendant appreciated the gratuity fee and simply alleged that "miscellaneous room revenue" was the gratuity fee. (*Id.* at 17.) According to Defendants, the "fundamental question about *what* (and how much) Defendants supposedly retained," and which Defendant retained the monies, was left unanswered by the evidence presented at trial. (*Id.*)

Defendants further argue that the evidence that was presented at trial established that "Defendants used the Gratuity Fee to supplement employees' wages" and "provide and upgrade the resort amenities to attract more guests and therefore benefit employees by increasing headcount, which in turn resulted in increased wages for servers and housekeepers." (*Id.* at 18.) These benefits to

Plaintiffs do not equate to Defendants appreciating the benefits. (*Id.* at 18–19.) In conclusion, Defendants argue that the evidence shows "Defendants distributed the Gratuity Fee to employees of the resort indirectly in the form of increased wages, better benefits, vacation pay, and in amenities designed to attract new guests who would, in turn, provide revenue needed to pay employees higher wages." (*Id.* at 19.)

Conversely, Plaintiffs submit that they showed through Defendants' own officers and employees that the miscellaneous room revenue and the gratuity "were one and the same," and that the gratuity fee was retained as general revenue. (Doc. 338, p. 13.) Plaintiffs rely on the testimony of Peggy Marshall ("Marshall"), the Director of Finance for Defendants, who responded "yes" to the question, "So the miscellaneous room revenue and gratuity fee are one in the same?" (*Id.*) They also point to the testimony of James McGrath ("McGrath"), the former General Manager, as well as Thomas Poehailos ("Poehailos"), who oversaw the resorts' financial performance, that the gratuity fee was retained by Defendants as miscellaneous revenue or revenue on the resorts' financial statements. (*Id.* at 14.)

As to Defendants' assertion that the gratuity fee was distributed to employees in a variety of ways, Plaintiffs argue that this is not supported by any evidence. (*Id.* at 15–16.) For example, Defendants did not provide financial statements that showed that the gratuity fee increased servers' and housekeepers'

compensation, nor was expert testimony presented that Defendants' employees were paid higher wages than other similarly situated industry employees. (*Id.* at 15.) Plaintiffs aver that McGrath "confirmed that the head count compensation paid to the servers and housekeepers had no relation to the gratuity collected, insofar as if defendants charged a higher room rate one day, and a higher gratuity as a percentage of room rate, plaintiffs' compensation did not change at all due to the collection of the higher gratuity." (*Id.* at 15–16.) Instead, McGrath's testimony, according to Plaintiffs, shows that Defendants appreciated the gratuity fee. (*Id.* at 16.) McGrath conceded that an increase in the gratuity fee percentage would help increase the profitability of the resort, which would "possibly" increase his bonus. (*Id.*)

In their reply, Defendants cite to trial testimony in support of their contention that Defendants used the gratuity fee to benefit employees. (Doc. 343, pp. 7–8.) Responding to Plaintiffs' arguments, Defendants submit that testimony is evidence; that Defendants were not required to prove anything through expert testimony, rather, it is Plaintiffs' burden to prove that Defendants appreciated the benefits; and that Plaintiffs are misrepresenting McGrath's testimony. (*Id.* 8–10.) Ultimately, Defendants contend that the "record reflects that the jury did not have enough evidence to reasonably conclude Defendants retained or appreciated the Gratuity Fee." (*Id.* at 10.)

Viewing the evidence in the light most favorable to Plaintiffs, the court finds that there was sufficient evidence for the jury to reasonably find that Defendants appreciated the gratuity fee.  Poehailos, as part of his job responsibilities, oversaw the financial performance of Cove Haven Resorts.  (Doc. 323, p. 11.)  At trial, Poehailos testified that he believed the gratuity fee would have been listed on financial statements as revenue.  (Doc. 339-3, p. 14.)  He stated that his understanding was that the gratuity fee was used for "purposes of upkeep and providing amenities," as well as to "supplement the wages of the servers and housekeepers," and "offset expenses at the resorts."  (Doc. 329-1, pp. 12–14.)  Regarding supplementing wages, Poehailos testified that it allowed Cove Haven Resorts "to pay a much higher wage than a minimum wage for a server, so the minimum wage for a server would not include tips would be much, much lower than what the servers were being paid at the resorts."  (*Id.* at 14.)  He further testified that servers were paid more than at other hotels and full-time employees were given holiday pay, vacation, and paid time off.  (*Id.*)

When questioned about the basis for his testimony that the gratuity fee was used to supplement wages, Poehailos testified:

> Because our revenues, because the wages that were paid to our servers in this instance were significantly above what the industry would pay. The only way that you could do that and stay open is to charge fees to be able to do that.  So it's my assumption that that's what it was used for.

17

(*Id.* at 17.)  Plaintiffs asked Poehailos about the intent of the gratuity, which led to the following exchange:

> A: To supplement wages.
>
> Q: Okay.  You keep saying to supplement wages, but do you see that on any document ever within the Cove Haven Resorts anywhere?
>
> A: Again, I only know, what I said, in terms of, you know, I know what they were paid.  I have a general idea of the fact that these servers were paid above, well above industry average and that, you know, revenues collected at the resort, that would be a result of revenues that were collected at the resort.

(*Id.* at 18–19.)

Maura Roman, Director of Sales and Marketing, testified that management's intent in collecting the gratuity fee was to "go towards" the servers and attendants. (*Id.* at 21.)  But, McGrath testified that "if the hotel collected a huge amount of gratuity one day, it didn't have any effect on what the waiters and waitresses were paid in head count."[7]  (Doc. 339-3, p. 33.)  He further acknowledged that increasing the gratuity fee percentage would "help increase the profitability of the resort" and, in turn, "possibly" increase his bonus.  (*Id.* at 34.)  Lastly, in reviewing financial statements for the resort, Peggy Marshall testified that "miscellaneous room revenue" came from the "gratuity that was paid by the guest" and agreed that

---

[7] Plaintiffs cite to page 753, lines 23 through 24 of the trial transcript in their brief for the proposition that McGrath testified "that the gratuity was retained as miscellaneous revenue by defendants."  (Doc. 338, p. 14.)  The court notes that the citation provided by Plaintiffs does not relate to that proposition, and the court was otherwise unable to locate the referenced testimony.

the "miscellaneous room revenue and gratuity fee [were] one in the same." (*Id.* at 41.)

Given the evidence presented at trial and detailed above, at a minimum, the jury could have reasonably interpreted the use of the gratuity fee for upkeep of the amenities at the resort as Defendants appreciating at least a portion of the gratuity fee. Therefore, the court cannot hold that there was insufficient evidence to find that Defendants appreciated the gratuity fee without "weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury."

### C. There was insufficient evidence for the jury to reasonably determine that Defendants accepted and retained the gratuity fee under such circumstances that it would be inequitable or unjust for Defendants to retain the gratuity fee without payment of value.

Defendants set forth two arguments regarding the third element. (Doc. 329, pp. 20–25.) First, Plaintiffs did not provide any evidence that Defendants agreed or promised to pay Plaintiffs the gratuity fee. (*Id.* at 21–23.) Second, Plaintiffs failed to prove that they expected to receive the gratuity fee as required by Pennsylvania law. (*Id.* at 23–25.)

#### 1. There was no evidence that Defendants promised or agreed to pay the gratuity fee to Plaintiffs.

Defendants submit that Plaintiffs' failure to provide any evidence that Defendants agreed or promised to pay the gratuity fee to Plaintiffs "dooms" their

unjust enrichment claim.  (*Id.* at 21.)  In support, Defendants point to case law that provides that "courts routinely reject unjust enrichment claims when a plaintiff is hired for a particular purpose, accomplishes that purpose, and is compensated for those services."  (*Id.* (quoting *Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 565 (M.D. Pa. 2014).)  They aver that Plaintiffs' claim that they should have received additional compensation for their services does not support an unjust enrichment claim and is contradicted by trial testimony.  (*Id.*)  At trial, Henkel and Lisa Hastings, a class member, admitted that they did not expect to receive the gratuity fee and, alternatively, they did not know the gratuity fee was collected.  (*Id.* at 21–22.)  Simply put, Defendants argue that Plaintiffs want to receive additional payment for "work they were already performing under an independent obligation to work for their employer," which has been rejected by Pennsylvania courts.  (*Id.* at 22–23.)

Plaintiffs attempt to distinguish the cases relied on by Defendants, specifically *McGoldrick v. Trueposition, Inc.*, 623 F. Supp. 2d 619, 622 (E.D. Pa. 2009), and *Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541 (M.D. Pa. 2014), arguing that Defendants misrepresent the law.  (Doc. 338, pp. 17–22.)  Then, Plaintiffs submit that the evidence at trial proved that the gratuity fee was "specifically intended for the servers and housekeepers for their traditionally-tipped work."  (Doc. 338, p. 20.)  Plaintiffs state: "The guests wouldn't have

20

otherwise paid the monies to defendants but for the defendants' policies and practices of misrepresenting to guests that these monies were going to the traditionally-tipped employees.  These facts cause defendants' retention of the benefit to be unjust, whether or not plaintiffs received some unrelated compensation." (*Id.* at 20–21.)  Plaintiffs cite testimony of Camber Coco ("Coco"), who worked as a front desk agent and supervisor, as well as a guest services manager, and Erica Simchon, a guest at one of Defendants' resorts, in support of their argument.  (*Id.* at 21.)

In reply, Defendants observe that Plaintiffs cited no evidence showing Defendants promised to pay Plaintiffs the gratuity fee "because there is none in the trial record."  (Doc. 343, p. 11.)

Contrary to Plaintiffs' assertion, the cases relied on by Defendants are on point.  In *McGoldrick*, the plaintiff asserted that he conferred a benefit upon his employer by almost securing a lucrative deal on behalf of his employer, who "demonstrated its appreciation of [the plaintiff's] work by offering to cash out his vested stock options."  623 F. Supp. 3d at 624–25.  The court found that the plaintiff's unjust enrichment claim failed because the plaintiff performed his job, which he was compensated for by his salary, regardless of whether his employer revoked the offer to cash out the plaintiff's vested stock options.  *Id.* at 625.  In *Diodato*, in rejecting a former employee's unjust enrichment claim, the court noted

21

that "courts routinely reject unjust enrichment claims when a plaintiff is hired for a particular purpose, accomplishes that purpose, and is compensated for those services." 44 F. Supp. 3d at 565 (citations omitted).

Additional cases relied on by Defendants also support the proposition that an unjust enrichment claim fails when a plaintiff-employee performs their job and is compensated for that job. *See Bair v. Purcell*, 500 F. Supp. 2d 468, 495 (M.D. Pa. 2007) (finding that defendants were not unjustly enriched when plaintiffs were paid a salary, earned commissions, and paid travel funds but then argued that those "salaries did not adequately compensate them for the value of their experience"); *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 52 (3d Cir. 2005) (affirming the district court finding that: "The plaintiff has not shown that he provided the defendants with anything more than the work he was hired to do."); *McGuckin v. Brandywine Realty Trust*, 185 F. Supp. 3d 600, 607 (E.D. Pa. 2016) ("In the employment context . . . plaintiff must allege that he did 'more than work to the best of his abilities for defendant as he was engaged to do.'"); *Mentecky v. Chagrin Land, L.P.*, No. 22-206, 2023 WL 5530305, at *8 (W.D. Pa. Aug. 28, 2023) ("While Plaintiff's continued employment with Defendants undoubtedly conferred a benefit upon Defendants that was received and appreciated, it is apparent from Plaintiff's allegations that Plaintiff was paid his normal wages for the work he

performed prior to his termination. . . . Thus, it cannot be said that Defendants were unjustly enriched by Plaintiff's continued employment.").

At trial, there was no testimony that Defendants promised to pay Plaintiffs the gratuity fee. Instead, the testimony established that Lisa Hastings, a class member, understood that Defendants were charging a gratuity fee to guests but that she was not receiving it. (Doc. 329-1, p. 3.) Henkel testified that she was not told anything about the gratuity fee when she began working for Defendants. (*Id.* at 6.) She further testified as follows:

> Q: When you worked at Highgate, you did not know that Highgate was charging guests a gratuity fee, did you?
>
> A: Correct.
>
> Q: So you had no expectation you were going to receive a gratuity fee from what was collected from the guests, correct?
>
> A: I knew that they were charging tips, like, a tip and gratuity at the desk at check-in, but I wasn't . . .
>
> Q: So you did know they were charging tips and gratuities at check-in, correct?
>
> A: Yes.

(*Id.* at 7–8.) However, when questioned about a declaration she signed in this case stating that "unbeknownst to you at the time Defendants were charging a 20-percent gratuity fee to guests," Henkel stated that she did not know the gratuity fee was twenty percent. (*Id.* at 9.) Defendants elicited further testimony on this topic from Henkel:

23

Q: Okay.  It says, I did not receive any gratuities out of this fee.  You already mentioned that, you acknowledged you didn't receive any of the gratuity fee, correct?

A: Correct.

Q: So if you were unaware Highgate was charging guests a gratuity fee, how was it you expected to receive any of that gratuity fee?

A: I don't know.

(*Id.* at 9–10.)

Plaintiffs point to testimony from Coco regarding what she understood the gratuity fee policy to be, i.e., "[a] gratuity charge of 20 percent is charged to our rates and goes towards traditionally tipped associates such as meal servers and housekeeping; this gratuity charge does not go to bartenders or cocktail servers, as alcohol is not included in our packages."  (Doc. 339-3, p. 24.)  Coco testified that this policy was consistent with the language used to train front desk agents.  (*Id.* at 25.)  She also stated that "gratuity" and "tip" were used interchangeably at the resorts and that she would advise guests at the front desk that "the gratuity was a tip and for the waiters and waitresses and housekeepers."  (*Id.* at 28.)  Lastly, Plaintiffs refer to Simchon's testimony wherein she stated that she was told the gratuity fee was "a tip that was going towards the waiter, waitresses, and the housekeeping."[8]  (Doc. 324, p. 81.)

_____

[8] In reference to this testimony, Plaintiffs cite "Ex. C, Trial Transcript, p. 17:6–12."  That citation is incorrect.  However, the court located the testimony quoted by Plaintiffs on page 716 of the trial transcript.  (Doc. 324, p. 81.)  The court notes that page 716 of the trial transcript was not

Here, there is no evidence to show that Plaintiffs were promised the gratuity fee by Defendants.  Like the plaintiffs in *McGoldrick* and *Diodato*, Plaintiffs were hired as servers and/or housekeepers, paid a base wage for that work, and performed their job duties.  *See McGoldrick*, 623 F. Supp. 3d at 625; *Diodato*, 44 F. Supp. 3d at 565.  Neither Henkel nor Hastings testified that, when hired or at any point during their employment, Defendants also promised to pay them the gratuity fee at issue.  Plaintiffs performed the jobs they were hired to do, and Defendants paid them their usual wages for the work performed.  *See Mentecky*, 2023 WL 5530305, at *8.  Because Plaintiffs performed the jobs they were hired to do and were compensated for that work, they cannot now complain that their wages did not adequately compensate them for their work.

Thus, reviewing the evidence in a light most favorable to Plaintiffs and without weighing the evidence, at best, the *guests* were told that the gratuity fee would be paid to servers and housekeepers.  However, it is not what the guests were told by Defendants that controls; rather, it is what Plaintiffs were promised by Defendants.  Plaintiffs provided no evidence at trial that Defendants promised to pay Plaintiffs the gratuity fee provided by the guests.

---

attached as an exhibit to Plaintiffs' brief in opposition.  Nevertheless, the court has considered this testimony in rendering a decision.

### 2.   There was no evidence presented regarding Plaintiffs' expectations regarding the gratuity fee.

Defendants also argue that Plaintiffs failed to present any evidence that they had a "reasonable expectation of payment" of the gratuity fee for the services they provided to Defendants.  (Doc. 329, pp. 23–25.)  Conceding that a party's expectation is not a stand-alone element of unjust enrichment, Defendants argue that expectations are relevant because the third element is "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation *is reasonably expected*, and for which the beneficiary must make restitution."  (*Id.* at 24 (quoting *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp. 3d 158, 163 (E.D. Pa. 2022).)  Defendants cite to trial testimony that Henkel and Hastings admitted that they did not expect to receive the gratuity fee.  (*Id.* at 24–25.)  For these reasons, Defendants submit that Plaintiffs provided insufficient evidence for a jury to conclude that Plaintiffs expected to receive the gratuity fee.  (*Id.* at 25.)

In turn, Plaintiffs argue that Defendants changed the verb in the standard for the third element from a plaintiff *has* a reasonable expectation of payment to a plaintiff *had* a reasonable expectation of payment.  (Doc. 338, pp. 22–24.)  Plaintiffs submit that Defendants "contorts the standard" by changing the verb tense.  (*Id.* at 22.)  Citing case law, Plaintiffs assert that "the present tense for reasonable expectation" is used in cases cited by Defendants and is the appropriate

26

standard.  (*Id.* at 22–24.)  In sum, Plaintiffs state that "the Pennsylvania Supreme Court is quite clear that there is no requirement that a plaintiff ***had*** a reasonable expectation at the time of conferral, but only that the compensation requested ***is*** reasonably expected."  (*Id.* at 24.)

However, even accepting Defendants' standard, Plaintiffs argue that there was sufficient evidence presented at trial that Plaintiffs had a reasonable expectation of payment for the services provided.  (*Id.* at 24–25.)  They point to trial testimony that servers and housekeepers could receive gratuities if it was left directly for them by a guest, and Coco advised guests at check-in "that if they felt they received exceptional service, they could tip."  (*Id.* at 25.)  Henkel and Hastings testified that they would occasionally receive cash tips and when Defendants' management ate in the dining room, they would leave a cash tip.  (*Id.* at 25–26.)  Based on this testimony, Plaintiffs submit that both they and management at the resorts expected that servers and housekeepers would receive tips in addition to their base pay.  (*Id.* at 26.)  In Plaintiffs' view, this expectation, coupled with guests being told that the gratuity fee went towards traditionally tipped employees, proves that Plaintiffs had a reasonable expectation of receiving the gratuity fee.  (*Id.* at 26–28.)

In their reply, Defendants submit that the grammatical tense argument is a red herring and that the law is clearly asking "whether a plaintiff conferred a

benefit on the defendant 'in circumstances where compensation is reasonably
expected.'" (Doc. 343, p. 12 (citation omitted).) Further, the present tense
references "*the circumstances*" leading to the litigation. (*Id.* at 13.) As to
Plaintiffs' arguments about the trial record, Defendants point out that Plaintiffs'
case is not about tips left in hotel rooms or on dining tables, rather, it is the gratuity
fee collected by Defendants. (*Id.*) The evidence cited by Plaintiffs simply shows
that Plaintiffs and guests knew that Plaintiffs were permitted to receive gratuities,
not that Plaintiffs expected to receive the gratuity fee collected by the front desk.
(*Id.* at 13–14.)

Courts in Pennsylvania have found that simply because "the plaintiff
provided unpaid services to the defendant that benefited the defendant" without
more is insufficient to satisfy the third element. *Ross v. Estate of Roberts*, 305
A.3d 990 (Table), 2023 WL 5995520, at *3 (Pa. Super. Ct. Sept. 15, 2023)
(citations omitted). "Proof that the plaintiff provided services to the defendant,
that the defendant accepted those services with notice that the plaintiff expected to
be paid, and that the defendant did not pay plaintiff, however, is sufficient to
support a cause of action for unjust enrichment." *Id.* (citing *Melmark, Inc. v.
Schutt*, 206 A.3d 1096, 1109–10 (Pa. 2019); *Commonwealth v. Golden Gate Nat'l
Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018)). Said another way, a plaintiff
must show a "reasonable expectation of payment" from the defendant for the

services provided such that it would be "unconscionable" for the defendant to receive the benefit of the plaintiff's services without payment. *Beemac, Inc. v. Republic Steel*, No. 2:20-cv-1458, 2023 WL 414395, at *8 (W.D. Pa. Jan. 25, 2023) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987); *King of Prussia Equip. Corp. v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 467 (E.D. Pa. 2001), *aff'd*, 117 F. App'x 173 (3d Cir. 2004)).

First, the court will not go through the exercise of parsing present and past tense regarding "has" or "had" a reasonable expectation of payment. Using either tense, the court is satisfied that the standard is whether the compensation is, or was, reasonably expected by Plaintiffs. *See id.* Moving to the evidence presented at trial, Plaintiffs accurately recount testimony on this subject. Henkel, Hastings, and management testified that servers and housekeepers could and would receive cash tips from guests, although only occasionally. (Doc. 339-3, pp. 4, 7–8, 38–40.) Coco testified that she would inform guests that they could leave a cash tip if they felt they received exceptional service. (*Id.* at 27.) The issue for Plaintiffs is that this evidence only proves that Plaintiffs reasonably expected to receive the occasional cash tip, not the gratuity fee at issue in this case. Again, it is irrelevant what the guest reasonably expected as to the gratuity fee—it is Plaintiffs' expectation that controls. Further, the record reveals that Plaintiffs acting as servers were paid by headcount in the dining room, and that headcount rate varied

by meal.  (Doc. 329-1, p. 4.)  Viewing the record in a light most favorable to Plaintiffs and without weighing any evidence, the record simply fails to prove that Plaintiffs had a reasonable expectation of receiving the gratuity fee.

For all of these reasons, the court finds that there was insufficient evidence for the jury to reasonably determine that Defendants accepted and retained the gratuity fee under such circumstances that it would be inequitable or unjust for Defendants to retain the gratuity fee without payment of value.[9]  Furthermore, because the court finds that Plaintiffs failed to prove the first and third elements of their unjust enrichment claim, the court will grant Defendants' motion for judgment as a matter of law.

## MOTION TO DECERTIFY CLASS ACTIONS

Because the court finds that judgment should be granted in Defendants' favor on the sole remaining claim in this case, the court need not determine whether to decertify the classes of housekeepers and servers.  Thus, the court will deny the motion to decertify as moot.[10]  (Docs. 309, 330.)

---

[9] Defendants also argue that the unjust enrichment claim is time-barred.  (Doc. 329, pp. 25–26.) Because the court is otherwise granting judgment as a matter of law, the court need not address this argument.

[10] Additionally, the court notes that resolution of the motion to decertify would be particularly challenging given that the parties do not agree on the appropriate standard of review and the Third Circuit has not set forth a clear standard to apply to this particular dispute.

CONCLUSION

For the reasons stated herein, the court will grant the renewed motion for judgment as a matter of law and deny as moot the motion to decertify class actions. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 30, 2024